June Term, 1861.

SIGERSON v. CUSHING.

---

## SIGERSON vs. CUSHING.

A written contract must be assumed to express conclusively the final intentions of the parties at the date thereof, and no evidence of their previous statements or negotiations is admissible to contradict or vary such contract.

But a contract is to be interpreted with reference to the situation of the parties and other circumstances existing when it was made, and these may be established by evidence *dehors* the contract itself.

In August, 1854, C., to promote his interests in a litigation then pending between him and H., concerning the "St. Croix Falls property" in this state, advanc-

| 14 | 527 |
| 95 | 115 |
| 14 | 527 |
| 104 | 641 |
| 14 | 527 |
| 105 | 543 |
| 105 | 544l |
| 14 | 527 |
| 110 | ²170 |
| 14 | 527 |
| 116 | ¹553 |

ed to S., who held a judgment against H. for over $11.000, which was a lien on said property and other lands, the sum of $7,500, secured by a mortgage on real estate and by a transfer to C. of said judgment; and it was agreed (in writing) between the parties, that C. should have the full control and ownership of said judgment for two years, or until C. should have caused execution to be issued on said judgment and the time for redemption from the sale on such execution should have expired. It was further agreed, 1 That if all interest in real or personal estate belonging to H. in the St. Croix Falls property, or in St. Croix Falls Company stock should be sold on such execution, and the same should be redeemed by H., then C. should pay to S. the difference between said loan (with interest) and the redemption money. 2. If the same should not be redeemed, and a *full* title to said property, and a termination of said litigation between C. and H. should enure to C. by reason of said sale, then said loan should be considered as repaid, or S., on electing to do so within ten days after notice, might take the whole amount of said judgment in that amount of stock in the St. Croix Falls Co., and repay said loan (with interest) to C. 3. That if a full and final decree in said litigation between C. and H. should be made in favor of C. within two years, S. should repay said loan, less the amount realized by C. from any sale on said execution. Thereupon C. caused execution to be issued on said judgment, upon which the "St. Croix Falls property" and other real estate of H. was sold to B., who was the attorney in fact of C., and the receipt of $12,017.22 on said execution from the marshal, was acknowledged by C.'s attorney of record. In February, 1857, a decree was rendered declaring H. to be the owner of the property in litigation between C. and H., from which C. appealed to the Supreme Court of this state. The property sold on said execution was never redeemed by H., but in March, 1857, for the purpose of settling all matters in controversy between C. and H., an agreement was entered into between them and B. and one K., (a judgment creditor of H. whose judgment was a lien on the property sold on the execution aforesaid, and who, previous to such agreement, had notified B, that he was preparing to acquire, under the statute, B.'s rights as the purchaser at such execution sale), by virtue of which agreement all litigation between C. & H. was terminated, the lien of K.'s judgment and other judgments against H. discharged, and a distribution made of the "St. Croix Falls property" between the several parties to said agreement. S. was afterwards notified that the property sold on said execution had not been redeemed, but did not at any time elect either to consider the loan to him as repaid, or to repay it and take the amount of the judgment transferred to C. in stock of the St. Croix Falls Co. In an action by S. to recover the difference between the amount of said loan and the sum alleged to have been *realized* by C. on said judgment sale; *Held,* that the language in the contract concerning a *full* title was not intended as a limitation on the power of C. in using the judgment, but that the intention was that he should use it, in any manner satisfactory to himself, in putting an end to the litigation; and that it was only in the event of his being prevented from doing this, by an actual redemption, that he was to be liable for the surplus. The contract was a sale of the judgment, provided it should be used by C. in ending the litigation, and having been so used, the only right which the plaintiff then had was to consider his loan repaid, or take the amount of his judgment in stock of said company.

APPEAL from the Circuit Court for *La Fayette* County.

June Term, 1861.

SIGERSON v. CUSHING.

The complaint in this action alleges the following facts: On the 21st of June, 1854, the plaintiff entered into an agreement in writing with one Bartlett, as solicitor and agent of the defendant, by which it was agreed that the defendant should advance to the plaintiff, within sixty days from that date, $7500 as a loan for two years, and that the plaintiff should give as · security for such loan, a mortgage on property in the state of Missouri, unincumbered, and valued at double the amount of said loan, and a transfer of a judgment recovered by the plaintiff against one Hungerford in the district court of the U. S. for the' district of Wisconsin, in January, 1854, for $11,355 37, and costs; that said *Cushing* should have the full control and ownership of the said judgment for two years, or until the expiration of the time for redemption from sale under execution issued thereon, and should be authorized to cause execution to be issued thereon and to collect the same; that if all interest in real or personal estate belonging to said Hungerford in the St. Croix Falls property, so called, in Wisconsin, or in the St. Croix Falls Company stock, so called, should be sold on such execution, and the same should be redeemed by Hungerford under the statutes of this state, then said *Cushing* should pay over to the plaintiff the difference between the said loan (with interest thereon then due) and such redemption money; and it was further agreed that if, the same not being redeemed, a full title to said property and a termination of the litigation then pending between said Hungerford and *Cushing* and others, should enure to said *Cushing* by reason of said sale, then said loan should be considered as repaid, or said *Sigerson* should take the whole amount of said judgment and costs in that amount of stock in the St. Croix Falls Company, and repay said loan with interest to said *Cushing;* and that the plaintiff should make his choice in the premises within ten days after notice. It was further agreed that if a full and final, decree should be made in said litigation, in favor of said *Cushing* and others, within two years, then said *Sigerson* should repay said loan and interest, excepting the amount which might be realized by *Cushing* from a sale under said

execution; and that the said loan should bear redemption interest. On the 30th of August, 1854, *Cushing* advanced to the plaintiff the said sum of $7500 as a loan, and the plaintiff, as security therefor, executed and delivered to said Bartlett, as agent for *Cushing*, his note for that sum, with interest at six per cent., payable January 1st, 1857, and also a note for $701.66, which was for the difference between the interest at six per cent. and interest at ten per cent., which the money due upon said judgment would draw after the sale, if the land should be redeemed by Hungerford. At the same time, to secure the payment of said loan, the plaintiff executed and delivered to certain persons therein named as trustees, a trust deed of his lands in Missouri aforesaid, instead of the mortgage mentioned in said agreement of June 21st; and also executed and delivered to said Bartlett, for said *Cushing*, an absolute assignment to the latter of said judgment against Hungerford, *such assignment, however, as between the plaintiff and defendant, being only a security for the repayment of said money and interest.* Thereupon, at the request of said Bartlett, the plaintiff substituted as his attorney in his said action against Hungerford, one McArthur, who thereafter acted in regard to said judgment as the attorney for *Cushing*. In September, 1854, *Cushing* caused execution to be issued on said judgment, by virtue of which Hungerford's interest in certain real estate in Polk county in this state, were sold by the U. S. Marshal for this district, December 14, 1854, for $12,313, and bought by said Bartlett. On the 2d of January, 1855, said McArthur acknowledged the receipt from said marshal of $12,017 22 (net proceeds of said sale), on account of said judgment. On the 3d of March, 1857, said Bartlett, for himself and as attorney in fact for said *Cushing*, made an agreement with said Hungerford and one Knowlton (who was a judgment creditor of said Hungerford, *having a judgment lien upon the real estate sold by the marshal as aforesaid*), by which agreement said real estate was to be discharged of all liens created by the plaintiff's judgment against Hungerford and other judgments, and *certain portions thereof were to be conveyed by the marshal to Bartlett, and other portions to Knowlton as assignee of the certificate*

*of sale as to the lands and interest in lands to be conveyed to him.*
The marshal afterwards conveyed certain portions of said
real estate to Knowlton and others to Bartlett, and Bartlett
has since conveyed the latter to *Cushing,* or the greater part
thereof. *The aforesaid agreement of Bartlett and Cushing with
Knowlton and Hungerford, was made in consideration that
Knowlton would not redeem said real estate from the sale on ex-
ecution, and also in consideration of the discharge of Knowlton's
claim and other large claims against Hungerford, which were
also liens upon said real estate; and it "was in fact a substitute
for redemption by said Knowlton."* The plaintiff avers that
by virtue of the facts aforesaid, his judgment against Hun-
gerford was paid in full by the sale of said real estate on said
execution; that the amount finally received by *Cushing* on
said judgment was $15,000, and that he has realized and
will realize by means of said judgment and sale, at least
$6000 more than the amount due to him from the plaintiff
on said loan of money; that *Cushing* neglects and refuses to
pay the plaintiff such surplus, and to deliver up and cancel
the plaintiff's said notes and to release said deed of trust;
and demands judgment for said sum of $6000, with interest
from March 3, 1857, and that the defendant deliver up and
cancel said promissory notes, &c.

The defendant's answer denies all those allegations of the
complaint which are italicized above, and avers as follows:
That certain lands in Polk county situated at the falls of
St. Croix, and which had constituted in part the capital stock
of the company called the "St. Croix Falls Company,"
were at the time of the rendition of the judgment in favor of
said plaintiff against said Hungerford, and had been for
years prior to that time, the subject of litigation between the
defendant and Hungerford; that said Hungerford was ut-
terly insolvent, and, aside from his asserted claim in said
property, had no property or means whatever; that this was
well known and understood by said plaintiff, who frequently,
after the rendition of said judgment, applied by letter to this
defendant and to his attorneys in Wisconsin, to purchase
said judgment, holding out as an inducement that this defen-
dant could thereby acquire said Hungerford's interest in said

lands, whatever it might be determined to be, and thus perhaps end the litigation ; that said judgment was for any other purpose worthless ; that the defendant was finally induced to take said judgment, and, to obtain the ownership and control thereof, entered into the agreement with said plaintiff mentioned in the complaint, and caused said lands to be sold on execution as aforesaid ; that upon such sale no money was in fact paid, but a receipt was given to the marshal, as is usual where property is bidden in by a plaintiff on execution ; that after said Hungerford's right of redemption had expired, and between the date of such sale on execution and the expiration of the period of redemption therefrom by the creditors of said Hungerford, a final decree was made by the circuit court of Rock county, in Wisconsin, in the cause pending between this defendant and the said Hungerford, whereby the title of said Hungerford was established to said lands in Polk county as against this defendant, from which decree this defendant appealed to the Supreme Court of the state, pending which a settlement of said litigation was had between this defendant and said Hungerford, by the terms of which a portion of said premises were to be conveyed by said Bartlett to said Knowlton, who represented said Hungerford therein ; but by a subsequent verbal agreement it was arranged that the marshal should convey directly to said Knowlton, which was accordingly done as aforesaid ; and defendant denies that he realized the sum of fifteen thousand dollars in such settlement in virtue of said plaintiff's judgment and the sale thereunder ; or that he did thereby, or the said Bartlett for him, acquire the interest of Hungerford in said lands; but avers that there were other large considerations entering into such settlement, as between this defendant and said Hungerford and the other parties thereto ; that this defendant, after the expiration of the day of redemption as aforesaid, and in pursuance of the agreement aforesaid between this defendant and the plaintiff, caused the plaintiff to be notified that no redemption had taken place, and demanded the plaintiff to elect whether he would take a release of said loan of $7,500 as the consideration for the purchase of said judg-

ment, or the amount of the judgment in St. Croix Falls Company stock, and that said plaintiff did thereafter, and before the commencement of this suit, elect to take such release; that this defendant has been always ready and willing to execute the same, &c.

On the trial, (which was by the court,) the plaintiff gave in evidence the written agreement between himself and Bartlett, as agent of *Cushing*, the substance of which is stated in the complaint; and a transcript of the execution issued upon his judgment against Hungerford, with the return thereon, the substance of which is stated in the seventh and eighth findings of fact by the court; and also a transcript of a judgment in favor of Knowlton, referred to in the 13th finding of facts by the court; and also the deposition of said Knowlton, who testified, in substance, that in the month of February or March, 1859, he was preparing to redeem the lands sold by the marshal under the execution upon said judgment in favor of *Sigerson*, against Hungerford; and that he told Bartlett in February, 1859, that he would redeem said lands, as a judgment creditor of Hungerford's, unless some arrangement should be made of the whole matter embraced in the suit commenced by Hungerford against said *Cushing* and others, and also of the matter of the sale by the marshal above referred to; that Mr. Bartlett was at that time acting as attorney in fact for said *Cushing*, in relation to all matters in which said *Cushing* had an interest in the State of Wisconsin; that a settlement was subsequently made by the witness for himself and as attorney in fact for Hungerford, and by Bartlett for himself and as attorney in fact for *Cushing*, of the matters in litigation in the suit of Hungerford against *Cushing* and others, and the sale referred to. In answer to the question, "whether that settlement was or was not substituted for the redemption by [the witness] of the land sold by the marshal under the *Sigerson* judgment," he answered: "Not entirely, but to the extent of the amount of money that it would have taken to redeem the lands from that sale." *Question.* "Did you redeem the lands from that sale, and if not, why?" *Answer.* "I did not, for the reason that we had settled the matter otherwise." *Question.*—

"Whether by that settlement the amount of money required to redeem the lands sold on that sale, was paid, or deemed to be paid." *Answer.* " It was treated as paid by me in permitting the marshal to convey to Bartlett, who was a purchaser at the marshal's sale, a portion of the lands sold, as to some of which he got an undivided half interest, and as to some other, the entire interest of Hungerford. In figuring the *Sigerson* matter, we took the whole amount for which it was sold, computing seven per cent. from the date of sale up to the day of settlement. In that way we ascertained the amount which it would have taken for me to redeem from that sale, if there had been nothing else to clear off." The witness also stated : " When *Gen. Cushing* saw the contract of settlement, he expressed himself satisfied. I recollect that Mr. Bartlett, in talking about the terms of settlement, for the purpose of making the best terms he could with me, said there would have to be a settlement with *Sigerson*, and they (Bartlett and *Cushing*) might have to allow him ten per cent. for it instead of seven."

The plaintiff also offered in evidence the contract of settlement referred to in the deposition of Mr. Knowlton, the substance of which is stated in the finding of the court, and proved that the property known as the " St. Croix Falls property," included in the sale of the marshal upon said execution, consisted of lot 4 in section 19, and lot 1 in section 30, which were sold together as the mill property, for $10,000, and that the residue of the property sold was not included within the " St. Croix Falls property," so called.— He also read in evidence patents and deeds, from which it appeared that at the time of the sale by the marshal, the title to all the real estate sold was in said Hungerford. He also introduced proof of a demand upon the defendant, as stated in the finding of the court.

The defendant offered in evidence sundry letters addressed by the plaintiff to him or his attorneys, the first dated May 8, 1850, and the last dated April 24, 1857. The plaintiff objected to their introduction, but the court overruled the objection. In one of these letters to *Mr. Cushing*, dated April 20, 1852, *Mr. Sigerson* said : " I hold the paper of Mr. Hun-

gerford for $10,000, and should be glad to realize upon it in the next 4 to 6 months or sooner, if I could do so without sellling it at a too heavy rate of discount. It has occurred to me, and I think must be apparent to you, that if you had this amount of his paper you could make your own terms with him in a settlement." In a letter of July 6, 1852, to *Mr. Cushing*, after referring to his claim against Hungerford and saying that he had proposed to sell it to *Mr. Cushing* at 80 cents on the dollar, he said : " Our courts sit here (St. Louis) on the 1st of September, and as he (Hungerford) has no defense, I can get judgment the first day of the term ; this judgment I can have transferred to Wisconsin, and have his interest sold for such amount as I may think safe to pay, and I hope now that you will see that as you are situated with Hungerford, with this amount of his paper you could force him to a settlement at once, and stop all further costs and delays, and make the property at once available." In a letter of July 19, 1852, to *Mr. Cushing*, he said : " The only interest I have in Mr. H. is to get from him what he is justly owing me ; and it was for this reason that I proffered you his paper at 80 cents on the dollar, that you might use it in such a way, to bring about a settlement of the business, as your sense of propriety might dictate, and let me fairly out of the difficulty. I have sent my attorney to St. Croix to bring a suit against Hungerford. If he has any interest in St. Croix, I will by this time have secured my claim to at least the extent of what his interest may be. This, when done, only places me in his present position. By it there is nothing settled. * * What you and your friends want is to have the title to the property settled so that you can turn it to some valuable account. I proffered to sell you the paper, with which you could soon bring about this result. I need the money ; but I cannot see why, if I do, you should not just as readily come forward and purchase it, and with it go to work and compel a settlement." In a letter of July 26th of the same year, to *Mr. Cushing*, he said : " I have sent to Stillwater to attach Hungerford's interest ; and the probability is, this may be the means of placing the property in my hands, and bringing you and me in collision. This of

June Term, 1861.

Sigerson
v.
Cushing.

course will not settle the difficulty between you and Hungerford: but if you would purchase the claim from me and take my place, you would have no difficulty, because you could get a judgment and sell the property and become the purchaser, and this would certainly end the fight." In a letter of January 7, 1854, to *Mr. Cushing*, he said: " I have obtained a judgment [against Hungerford] at the present term of the Federal court at Milwaukee for $10,000 and interest, which places the amount now over $11,000. * * I am in want of money, and I am now as I have heretofore been, of the opinion that if you held this claim you would have no difficulty in bringing all your trouble with him to a close in a very short time." In a letter of January 19, 1854, to Mr. McArthur, after referring to the judgment against Hungerford, and saying that he could afford to take a little less than the face of it, and could probably realize by a sale of the property in July, but had use for the money at an earlier day, he said: " The position of the suit between *Gen. Cushing* and Hungerford is doubtless in such a shape at this time as will enable you to say at once whether it would be any object to *Gen. Cushing* to purchase or not. Unless it will give him some advantage in recovering and getting possession of the property, or in effecting a compromise, I of course, could not see that he would be willing to give himself any trouble about it. If I do not make a sale of the judgment, I will press the matter to a sale as soon as the nature of the case will admit." In a letter to *Gen. Cushing*, dated the 23d of the same month, after referring to the judgment, he said: " It is evident that this, if enforced, will give the holder the property, or at least clean out any interest Hungerford can have. To do this will require some six months for me before I can realize, which does not suit me. Will you answer and say whether or not you wish to purchase." In a letter of February 2, 1854, to Mr. Bartlett, he wrote: " My great object is to have the business closed with as little delay as possible. If ever I become the purchaser, a difficulty may arise between *Gen. C.* and me, of as troublesome and lasting a nature as the one now existing between him and Hungerford, and for this reason I would prefer to

sell him my judgment as it now stands, and let him sell the property at such time and pay for it such price as he may see fit. I would make no offer to sell the judgment property for a less amount than the face of it. I might accommodate somewhat in time for a portion of the money." In a letter of February 8th, 1854, he wrote to *Mr. Cushing*: "I have offered to sell you my judgment against Hungerford mainly for the reason that I desire no conflict about the property. If I am compelled to be purchaser, it only places [me] where Hungerford now stands, and leaves the prospect open for a law suit between you and me. If, on the other hand, you become the owner of my judgment, it does appear to me that all you have to do is to sell, and purchase the property at such price as you think, under all the circumstances, you should pay for it, which would evidently settle the question at issue between you and Hungerford." In a letter to Mr. Bartlett, dated May 19, 1854, he said: "I have communicated to-day to *Gen. Cushing* the following proposal: to sell him my judgment against Hungerford for its face, with interest, costs, &c., he paying me cash for the same. I propose further to guaranty, in the event of *Gen. Cushing* failing to secure from Hungerford the amount of this claim within two years, to return him his money with legal interest, and to secure him to this effect, I will give him real estate security worth $20,000. This would give *Gen. C.* the ownership of the property before the case can possibly be brought to an issue in the courts, for he can advertise and sell at once under my judgment, and be the purchaser, and thereby be in court, when the case comes up, the *real owner* of the entire property, which I am informed is worth prospectively from 100 to 500,000 dollars." Under date of May 31, 1854, he writes to *Mr. Cushing*: " My proposition was to sell you my judgment against Hungerford, and I may be correct in the view I took that you now having, as I presume you will have, possession, it only wants the power which my judgment contains, to close effectually a vexatious suit, which has annoyed myself and others for years, and which, if not cut short in this way, will doubtless continue to do so for years to come." Under date of June 6,

1854, *Mr. Sigerson* said in a letter to Mr. Bartlett: "You are fully aware I have chosen to remain outside of the controversy going on between *Gen. Cushing* and Hungerford, although my real interest is about as large as either of theirs. * * I have spoken with *Gen. Cushing's* personal friends in this city with reference to my position, and they, without any hesitation, say, that he should purchase my claim as the only safe and certain way to rid himself of a suit that may give him much trouble and expense." In another letter of June 13th, to Mr. Bartlett, he presented a copy of a paper signed " R. Rantoul, jr.," " from which," he said, " it would appear that in any event Hungerford's interest is about equal to my claim, aside from any increase in the value of the property since 1848, which should make the proposition [referred to in the letter of May 19th] a very safe one." On the 24th of April, 1857, in a letter to *Mr. Cushing*, after stating that he had written to Mr. Bartlett to send him a deed of release for the Missouri property embraced in the deed of trust, *Mr. Sigerson* said : " The law of Missouri would enable me to recover of you 10 per cent. damages for refusing to release the mortgage you hold, after having received full satisfaction, which you have undoubtedly done. I hope not to be forced to any such measure for relief. I understand from Bartlett that the suit was settled on the 3d of March, and that a compromise had been made, and that Hungerford had repurchased from you the title you had acquired by a sale under my judgment and execution, and that some $15,000 had been allowed you in the settlement on that account. Now admitting this to be so, I am suffering severe loss and inconvenience by your neglecting to forward the release deed." The defendant also offered in evidence the record of an action brought against him and others by said *Sigerson*, on the 21st of July, 1857, in the St. Louis land court, in which the complaint of said *Sigerson*, after stating the agreement made between himself and *Cushing* on the 21st of June 1854, the execution of his two notes to said *Cushing* and of the deed of trust herein before mentioned, and the sale of real estate to Bartlett under the execution against Hungerford, and the receipt given by McAr-

June Term,
1861.

SIGERSON
v.
CUSHING.

thur for the proceeds of said sale, alleged that by the payment of said money by the marshal to said *Cushing*, the said notes and deed of trust became fully satisfied, and that *Cushing*, though requested, had refused to surrender said notes or acknowledge satisfaction of said deed of trust on the margin of the record thereof, or to deliver to said plaintiff a release of said deed of trust, and prayed the court for a decree that said *Cushing* deliver up said notes to be cancelled, and that he acknowledge satisfaction of the deed of trust on the record thereof, and for ten per cent. damages, &c. The answer of *Cushing* was a denial that he had ever been requested by the plaintiff to acknowledge satisfaction of said deed of trust, or to deliver to him a release thereof. The judgment in said action is stated in the finding of the court. The plaintiff objected to the admission of the evidence, but the objection was overruled.

The court found the following facts, with others admitted by the pleadings:

That prior to the making of the memorandum of agreement set out in the complaint in this action, the defendant was involved in litigation with one Hungerford and others concerning the St. Croix Falls property, so called, situate at the Falls of St. Croix, in the state of Wisconsin, which was then undetermined. 2d. That on the 11th day of January, 1854, the plaintiff recovered in the district court of the United States for the district of Wisconsin, against said Hungerford, a judgment for $11,258 33 damages, and costs of suit to the sum of $83.50. 3d. That the plaintiff proposed to the defendant to sell him said judgment, to enable the defendant, by means of it, to acquire any interest which said Hungerford might have in said St. Croix Falls property, so called, and that the defendant, for that purpose, and with a view of promoting his interests in said litigation, did enter into said contract mentioned in the complaint. * * *. 7th. That the said defendant, on the first day of September, 1854, caused an execution to be issued out of the said district court upon the said judgment, and delivered to the marshal of the United States for the district of Wisconsin, to be executed; who, by virtue thereof, levied upon, and on the

June Term, 1861.

SIGERSON
v.
CUSHING.

14th day of December, 1854, sold at public auction, all the interest of the said Hungerford in the following described real estate, situate in the county of Polk and State of Wisconsin, for the prices set opposite each piece :

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lot No. 4, | section 19, | town No. 34, | range 18 west, | | | | | | | | } $10,000.00 |
| " " 1, | " 30, | " | " " | " | " | " | " | | | | |
| " " 2, | " 30, | " | " " | " | " | " | " | | | | 750.00 |
| " • " 3, | " " | " | " " | " | " | " | " | | | | 1,150.00 |
| " " 1, | " 19, | " | " " | " | " | " | " | | | | 1.00 |
| " " 2, | " " | " | " " | " | " | " | " | | | | 1.00 |
| " " " | " 25, | " | " " | " | " | " | " | | | | 1,00.00 |
| " " " | " " | " | " " | " | " | 19 | " | | | | 10.00 |

The south-east quarter of the north-west quarter
　of section 19, town 34, range 18 west,　　　1.00
The north-east quarter of the north-east quarter
　of section 9, town 34 north, of range 18 west,　100.00
The north-east quarter of the north-west quarter
　of section 9, town 34, range 18 west,　　　100.00
The south-west quarter of the south-east quarter
　of section 12, town 33, range 19 west,　　　100.00
　　　　　　　　　　　　　　　　　　　——————
Making in the whole the sum of　　　$12,313.00

9th. That at the time of such sale on said execution, the legal title to all of said real estate was in the said Hungerford, subject, nevertheless, to the termination of the said litigation as to that part thereof constituting the " St. Croix Falls property, so called." 10th. That lots No. 4 in section 19, and No. 1 in section 30, constituting the mill property at the Falls of St. Croix, was the only real estate or property constituting the " St. Croix Falls, property, so called," and that the residue of the real estate was not involved in said litigation. 11th. That no full or final decree was ever made in said litigation in favor of said *Cushing* or said *Cushing* and others, but that in the month of February, 1857, a decree was entered in the said suits and litigation in favor of said Hungerford and against said *Cushing* and others, declaring said Hungerford to be the owner of said property involved in the litigation, which was situated in the state of Wisconsin. 12th. That said property was not, nor was any part of it,

redeemed from said sale by said Hungerford ; nor did a full title, nor a termination of the litigation between Hungerford and *Cushing* and others, enure or accrue to said *Cushing* by reason of said sale under said execution.    13th. That one Knowlton recovered against said Hungerford, in the circuit court for Rock county, on the 10th day of December, 1856, a judgment for the sum of $526.95 damages and costs, and caused a transcript of the record thereof to be filed in the office of the clerk of the circuit court for Polk county, on the eighth day of January, 1857, in due form of law, so that the same became a lien upon the premises so sold by virtue of said execution.    14th. That said Knowlton, preparatory to redeeming said property sold, obtained a certified transcript of the docket of said judgment from the clerk of the court for the county of Polk, and made the affidavit required by law to entitle him to redeem, and was making his arrangements to redeem from said sale, and so informed the said Bartlett.    15th. That in the meantime an appeal had been taken from the decree of the circuit court to the supreme court by Hungerford and by said *Cushing* and others, and that for the purpose of settling all matters of controversy between *Cushing* and others and Hungerford, as well the *Sigerson* judgment as other things, an agreement was entered into, dated the 3d of March, 1857, between *Cushing*, Hungerford, Knowlton and Bartlett, in the words and figures following.    [Here follows a copy of the agreement.    The first section is in these words :  " 1st. That all suits, actions, causes, motions or appeals now pending in any court of the state of Wisconsin, or of the United States, wherein the said Hungerford and *Cushing*, either individually or with others, are parties,    *    *    *    shall be, and the same are hereby terminated and ended, and a perpetual stay of proceedings therein shall be made, entered and filed, and the said suits, actions, &c., be dismissed and finally discharged, and satisfaction shall in all cases be entered where a judgment or decree for the payment of money, or the performance of other acts, shall have been entered or made against or in favor of said Hungerford or *Cushing* ; and like satisfaction shall be entered in all cases where any judgment or decree

*June Term, 1861.*

SIGERSON
v.
CUSHING.

made or entered, shall in any way affect or constitute a lien upon any of the property hereinafter described or mentioned." The second section provided that lots No. 4 in section 19, and Nos. 1, 2, and 3, section 30, T. 34, R. 18 in Polk county, should be deeded to a company to be formed under an act of the legislature of this state, " to incorporate the St. Croix Manufacturing and Improvement Company," approved February 24, 1857 ; that the same should represent $150,000 of the capital stock of said company, to be issued to Bartlett and Knowlton in equal proportions; provided, however, that the company should convey to Knowlton and Bartlett 200 city lots in equal proportions, to be selected by each of them from any portion of the said four lots by them so to be conveyed, whenever the said lots should have been surveyed, platted and recorded as part of the city or town to be laid out by said company. The third section provided that lots 5, 6 and 7, S. 19, T. 34, R. 18, situate in Minnesota, and lots 1, 2 and 3, in said S. 19, and the S. E. qr. of the N. W. qr. of the same section, and lot 4 in S. 30, and lot 2, S. 25, T. 34, R. 19, in Polk county, should be conveyed by C. St. John Chubb and S. C. Edes and their associates to said company, and they and their associates should also subscribe and pay $150,000 to said company, and said land together with said money should constitute $150,000 of the capital stock of said company, to be issued to such persons as they should direct, provided that said Knowlton and Bartlett should join in making a good title to the aforesaid lots 1 and 2 and the S. E. qr. of the N. W. qr. of said S. 19 ; and provided further that the said company should convey to said Chubb and Edes and their associates 263 lots, to be selected from the lands so to be conveyed by them, &c. Section 4 provided that the N. E. qr. of the N. E. qr. and N. E. qr. of the N. W. qr. S. 9, T. 34, R. 18, and the S. W. qr. of the S. E. qr. S. 12, T. 33, R. 19, in Polk county, should be deeded to Knowlton by Bartlett. Section 5 provided that Bartlett should discharge all liens upon any of the aforesaid property created by the aforesaid judgment of *Sigerson* against Hungerford, or convey to Knowlton the title to those tracts of land above specified as to be conveyed to him, when the

same should be acquired by virtue of the purchase by Bartlett under said judgment; and also discharge a certain judgment in favor of one Perkins against said Hungerford, and any lien upon any of said property held by one Green or by any one under or through him. The sixth section provided that Knowlton should discharge all other liens on said property, created by any judgment against Hungerford in any court of this state, and also that Knowlton and Bartlett should discharge the lien claimed under a mortgage made by Hungerford to one Folsom. The seventh section provided that Bartlett should retain for himself lot 2, S. 25, T. 34, R. 18 in said county.] 16th. That upon making said agreement said Knowlton did not make any redemption, and that all the terms and conditions of said last agreement between said *Cushing*, Hungerford, Knowlton and Bartlett, were performed and carried out. 17th. That after the time for the redemption of said premises from said sale had expired, *Sigerson* was notified by Bartlett, acting for *Cushing*, that the premises had not been redeemed ; and that he, the said *Sigerson*, did not at any time elect, either to consider the said loan repaid, or to repay the same with interest and take the amount of his judgment, interest and costs in that amount of the "St. Croix Falls Company stock, so called." 18th. That before the commencement of this suit, *Sigerson* demanded of *Cushing* the release and cancellation of his notes and said trust deed, and payment to him of the difference between said loan and interest, and the sum for which said property was sold and interest, after deducting the costs and expenses of said sale therefrom, the amount of the sale being $12,312.00, and the cost and expenses being $295.78 ; difference as per McArthur's receipt, 12,017.22 ; which *Cushing* refused to do, but offered to cancel the notes and trust deed and execute and deliver to *Sigerson* a receipt in full of all claims. 19th. That *Sigerson* declined so to do and brought this action; and after bringing this action, and on the 25th day of July, 1857, he commenced a suit in the St. Louis land court, in the state of Missouri, for the purpose of obtaining a cancellation of said trust deed, and a release of his land in Missouri from the lien and incumbrance thereof. That

in that suit *Cushing* appeared by attorney, and on the 4th of March, 1858, judgment was entered in said suit in favor of *Sigerson* and against *Cushing*, that *Sigerson* recover the statute penalty of ten per cent. as damages for refusing to cancel said trust deed, and that the trust deed be cancelled and annulled, and the trustees named therein discharged from the trust.

From the foregoing facts the following conclusions of law were found : 1. The purpose and intent of the parties entering into the agreement or contract, was to enable *Sigerson* to realize some immediate benefit from his said judgment, and enable *Cushing* to use it as a means of terminating the litigation between Hungerford, himself and others, and to acquire any interest which Hungerford might have in the property involved in said litigation. 2. That by the terms of the agreement, the $7,500 was a loan of money from the defendant to the plaintiff; that the trust deed or mortgage and notes mentioned in the pleadings in this action, and the assignment of the judgment, were made and delivered by the plaintiff as a security for the payment of said loan. 3. That by the terms of said agreement, *Cushing* was bound to account in money for the judgment assigned in case all of Hungerford's interest in the " St. Croix Falls property, so called, in Wisconsin, or in St. Croix Falls Company stock, so called," should be sold upon execution, and the same should be redeemed by said Hungerford, and in no other event. 4. That in case Hungerford had redeemed from such sale, and in no other event, *Cushing* was bound by said agreement to pay over to *Sigerson* the difference between the said loan and the interest thereon due, and the redemption money paid by said Hungerford; and that inasmuch as it is a conceded fact that said Hungerford had not redeemed from the sale under the said execution upon the *Sigerson* judgment, *Cushing* was under no obligation to account for or pay to *Sigerson* any money on account of the sale under said execution ; but that the plaintiff was only entitled to an election to consider the whole loan paid, or to repay said loan and interest and take the whole amount of said judgment, interest and costs in that amount of stock in the "St.

Croix Falls Company, so called." 5. That the transaction between *Cushing*, Hungerford, Knowlton, and Bartlett was neither a redemption from the sale under said execution nor a substitute for redemption, and was nothing more than a settlement between them of their respective rights in the premises, and of all matters of difference between Hungerford and *Cushing*, as well the judgment in favor of *Sigerson* as all other claims, and furnished no ground of action in favor of the plaintiff against the defendant; but that it effectuated the very object which the parties had in view in the transfer of the judgment—a termination of the litigation. 6. That notwithstanding a full title to the "St Croix Falls property," and a termination of the litigation between Hungerford and *Cushing* and others, did not accrue to *Cushing* by reason of said sale, still *Cushing* had a right, by the terms of the agreement, to use that judgment against Hungerford in any way he chose not inconsistent with the spirit thereof, and that the use made of it in effecting a compromise and settlement with Hungerford and those claiming under him, as evidenced by the transaction between himself, Hungerford, Knowlton, and Bartlett, was in accordance with the manifest intention of *Sigerson* and *Cushing*, and that therefore *Sigerson* had only the right to consider the loan of $7,500 as repaid, or to repay it with interest to *Cushing*, and take the amount of his judgment, interest and costs in "St. Croix Falls Company's stock, so called," and could not maintain this action. 7. That the plaintiff, having failed to elect to consider the loan repaid, or to repay it and take the amount of his judgment in the "St. Croix Falls Company's stock, so called," within ten days after receiving notice, was estopped from claiming any other right than the payment and cancellation of his notes and mortgage or trust deed. That by the terms of the contract, *Cushing* was only to pay *Sigerson* the difference between the loan and interest to the time of redemption, in case the premises were redeemed by Hungerford or some one for him; but if the property was not redeemed from the sale, then *Cushing* was not to pay any money to *Sigerson*, but the loan was to be considered repaid, and the notes and mortgage or trust deed cancel-

led, or at *Sigerson's* election he might pay the loan and interest to *Cushing* and take stock for the amount of his judgment, interest and costs, and from the facts above found was not entitled to recover anything against *Cushing.* 8. That inasmuch as a full and final decree was not made in said litigation in favor of *Cushing* and others, within two years from the date of said agreement or ever, the plaintiff could make no claim against the defendant for anything realized from the sale under execution, and especially so as he had, by the suit brought in the St. Louis land court, obtained a cancellation of his trust deed, upon the claim that the debt had been paid by the sale under said execution, and that the fact that that suit was commenced after this made no difference. 9. That Bartlett being attorney in fact for *Cushing*, the purchase made by Bartlett at the sale must be regarded as having been made for *Cushing's* benefit, and regarding the sale the same as if it had been made by *Cushing* in his own name, *Sigerson* was not entitled to any portion of the proceeds of said sale, inasmuch as no contingency contemplated by the agreement had arisen, which would entitle him to repay the loan and have any amount realized by *Cushing* from the sale under execution deducted therefrom.

The plaintiff excepted to each conclusion of law, and to the order for judgment, and moved the court for a new trial, on the case and exceptions, which was overruled, and the plaintiff excepted.

Judgment for the defendant.

*J. A. Sleeper*, for the appellant, contended, among other things, that the only event in which *Sigerson* was, by the terms of the agreement, to be excluded from recovering the surplus of the proceeds of his judgment over the $7,500 and interest, was that Hungerford's interest in the St. Croix Falls property, if sold on the execution, should not be redeemed from the sale *by anybody*, so that by reason of the sale the litigation should terminate in favor of *Cushing*, and he should get a *full* title to the property. Even then *Sigerson* might, at his election, repay the loan and take the amount of the judgment and costs in stock of the St. Croix Falls Company. Such full title to

June Term,
1861.

SIGERSON
v.
CUSHING.

the property and termination of the litigation not having enured to *Cushing* by virtue of the sale, and he having by his own act relinquished all claim to one half of the property, the plaintiff cannot reap the advantage of that choice, nor would *Cushing* have been bound to allow him to take the stock if he had so elected; and the plaintiff is not excluded from recovering the balance realized upon his judgment above the amount of the loan secured thereby.   2. If none of the contingencies provided for in the agreement have happened—and the court has found as matter of fact and of law that they have not—*Sigerson* is entitled to whatever *Cushing* has realized from the judgment, or to the value of it.   3. *Cushing* is estopped from denying that the property sold on execution was worth the sum bid, or that the money was paid on such sale; and must account for the money whether paid or not; since by causing the property to be conveyed by the marshal to Bartlett and others, he has put it out of the reach of *Sigerson*, who was entitled to either the property or the money bid for it.   4. The settlement of March 3d, 1857, prevented Knowlton from redeeming, and was therefore, so far as he was concerned, a substitute for redemption.   Such an agreement on the part of Bartlett and *Cushing* was in fraud of *Sigerson's* rights.

*Emmons, Van Dyke & Hamilton,* for respondent.

*By the Court,* PAINE, J.   The merits of this case depend entirely on the question whether the circuit court was right or not, in holding that the use made by *Cushing* of the judgment assigned to him by the plaintiff, was consistent with the intention of the parties in making the agreement by which it was transferred.   For if it was, then it is obvious that the plaintiff's only right would be that which he reserved in his contract, the option of considering his loan paid by the judgment, or of repaying it and taking the amount of the judgment in the stock of the St. Croix Falls Company.

In determining this question the contract is to govern.   It must be assumed to express conclusively the final intentions of the parties, and no evidence of their previous statements

December 11

or negotiations is admissible for the purpose of contradicting or varying it in any degree. But it is not true that in interpreting the contract, the court must look at that alone. On the contrary, it is to be interpreted in the light of the surrounding circumstances. It is often absolutely essential that the court should know the facts surrounding the parties, and the situation in which they are placed, in order to interpret the meaning of what they say in their contracts. And so far as the plaintiff's letters, written before the making of the contract, tended to show the situation of these parties at the time it was made, they were proper evidence for that purpose, though a large portion of them may have been entirely irrelevant.

The counsel for the plaintiff contends that the case is to be governed by the same principles that would be applicable to it if the judgment had been assigned merely as a security for the loan. But it is obvious from the evidence, and from the contract itself, that this was not its sole character. The contract plainly shows a desire on the part of *Cushing* to use the judgment for the purpose of compelling a favorable termination of his litigation with Hungerford, and expressly provides that it may be so used, and reserves to the plaintiff in that event the option already mentioned. The duty therefore did not devolve upon *Cushing*, to use the judgment merely for the purpose of getting his money back, and to act as *Sigerson's* trustee, so as to make the most of it for him beyond that. But he had a right to use it in bringing about a termination of the litigation for his own benefit, giving *Sigerson*, in that event, the option expressed in the contract. That he had a right to use it, provided he had secured a full title to the property in litigation, is conceded by the plaintiff's counsel, as also the fact that in that event the plaintiff's only right would have been to have elected either to consider the loan repaid or to take the stock. But he says that *Cushing* did not secure a full title, but settled for a part only, and thus the value of the stock which the plaintiff might elect, was less than it would have been had *Cushing*, in the very language of the contract, secured a " full title to the whole." Hence he says the judgment was used in a manner

not authorized by the contract, and the parties are remitted to the rights growing out of the relation of lender and borrower, leaving *Cushing* liable for whatever value has been realized from the security over and above the loan. If his construction of this clause in the contract is correct, and it must be regarded as a limitation on the power of *Cushing*, prohibiting him from using the judgment to secure anything less than a full title, then I think this conclusion necessarily follows. But I cannot agree to this construction of the contract. On the contrary, it seems clear that the idea of limiting *Cushing* to the acquisition of a "full title" by the use of the judgment never entered into the plaintiff's mind. I think that language was used because it was descriptive of the purpose for which *Cushing* desired to use it, and included the most favorable result that could possibly occur. It was as though *Sigerson* had said, "if you succeed in accomplishing what you desire with this judgment, then I reserve the right to consider my loan repaid or to take a share in your stock." It is impossible to believe that the language about obtaining a full title was introduced by him with any reference to a diminution of the value of the stock he might elect, by a settlement which should obtain less than a full title, and with a view of preventing such a settlement. On the contrary, there is every reason to believe that had such a question ever presented itself distinctly to the minds of the parties, he would have trusted his interest, growing out of the option he had reserved to take a part of the stock, unhesitatingly to any settlement which the judgment and discretion of the principal parties in interest might induce them to make. This seems to be beyond any doubt, from the fact that even if *Cushing* had succeeded in obtaining a full title by means of the judgment, the plaintiff only reserved to himself, in case he did not choose to take a share in the stock, the right to consider his loan paid. If they had expressly contemplated the event of *Cushing's* obtaining a less advantage from the judgment, the plaintiff certainly would not have reserved a greater benefit to himself.

I am therefore of the opinion that the language concerning a full title was not intended as a limitation on the power of

*June Term, 1861.*

*Cushing* in using the judgment, but that the intention was that he should use it in any manner satisfactory to himself, in putting an end to the litigation, and it was only in the event of his being prevented from doing this, by an actual redemption, that he was to be liable for the surplus. It is one of the instances where the greater includes the less, and the authority to use the judgment to obtain a full title, imports, upon the facts of this case, the right to use it in any manner to accomplish a termination of the litigation satisfactory to *Cushing.* The conclusion of the circuit court upon this point was therefore correct.

And this disposes of the whole case. For the contract was a sale of the judgment, provided it was used by *Cushing* in ending the litigation. The only right which the plaintiff then had, was to consider his loan repaid, or to take the stock. He could not maintain this action.

The judgment is affirmed, with costs.