Hoffman vs. Maffioli.

HOFFMAN, Respondent, vs. MAFFIOLI, Appellant.

*November 8 — November 24, 1899.*

*Evidence: Shortage in weight: Contracts: Mutuality: Definiteness: Parol evidence.*

1. In an action to recover the price of several hundred loads of crushed stone, the fact that there was a shortage in three loads which were reweighed is insufficient to establish a shortage in any other load.

2. A written offer by plaintiff to furnish to defendant crushed stone and curbing at certain prices "as per specifications, delivered on street in the city of W. in such quantities as may be desired," was accepted without qualification. No specific reference was made in the writings to a contract which defendant had recently made for macadamizing a street in W. Defendant had, also, at the time, two other contracts for macadamizing in other cities, and some of the stone received from plaintiff was shipped elsewhere. It was admitted by defendant that he was not bound to receive from plaintiff all the stone required to complete the work in W., but only such quantities as he might desire. *Held,* that the contract did not bind plaintiff to furnish all the stone required for that work, but left the amount to be furnished unfixed and unascertainable, and that parol evidence was inadmissible to enlarge or modify its terms. MARSHALL and BARDEEN, JJ., dissent, being of the opinion that, inasmuch as the literal sense of the language used did not constitute the contract a binding agreement, it became the duty of the court to construe it from the standpoint occupied by the parties when making it, and that, so construed, its plain purpose was that the plaintiff should furnish all the stone that might be needed by defendant from time to time for the work upon said street in W.

APPEAL from a judgment of the county court of Waukesha county: M. S. GRISWOLD, Judge. *Affirmed.*

For the appellant there was a brief by *Clasen & Walsh*, and oral argument by *F. J. Clasen.*

For the respondent there was a brief by *Ryan & Merton*, and oral argument by *T. E. Ryan.*

CASSODAY, C. J. This action was commenced June 28, 1898, to recover $2,888, with interest from June 16, 1898, on

account for goods, wares, and merchandise sold and delivered by the plaintiff, doing business under the name of "The Waukesha Stone & Quarry Company," to the defendant, between April 23, 1898, and June 16, 1898, at the agreed price, and which was reasonably worth the sum stated, all of which became due and payable June 16, 1898.

The defendant answered by way of admissions and denials, and also alleged by way of counterclaim, in effect, that the defendant was a principal contractor engaged in macadamizing and paving streets, April 15, 1898, and as such principal contractor he entered into a contract with the city of Waukesha for the concreting and paving of the whole of West Main street in that city; that April 21, 1898, the plaintiff, in the name of the Waukesha Stone & Quarry Company, submitted a written proposal to the defendant in the words and figures following, to wit:

                              "Waukesha, Wis., April 21, 1898.
"*To Mr. G. Maffioli.*

"DEAR SIR: We propose to furnish crushed stone at 85c. per yard of 2,500 lbs., 30 in. x 4 in. curbing, including corners at 34c. per lineal foot, protection curb 15 in. x 4 in. at 10c. per lineal foot, all as per specifications. Delivered on street in the city of Waukesha in such quantities as may be desired.

                    "Respectfully submitted,
               "THE WAUKESHA STONE AND QUARRY CO.,
                              "per KIEHL, Mngr."

The answer also alleged that such proposal was duly accepted in writing, written thereunder by the defendant, May 4, 1898, as follows: "Accepted May 4, 1898. G. MAFFIOLI;" that the plaintiff had neglected and failed to perform such agreement on his part, in that he misrepresented the actual measurement and weight of stone delivered to the defendant; that it was ascertained by accurate tests made May 30, 1898, of three or four loads of crushed stone

so delivered by the plaintiff to the defendant, and at different times, that said loads were less in weight by fifty, three hundred, and five hundred pounds, respectively, than was represented by tickets or scale receipts delivered by the plaintiff to the defendant; that the defendant had reason to believe, and did believe, that every load of crushed stone delivered to the defendant by the plaintiff was far less in weight and measurement than represented and charged by him; that the plaintiff absolutely refused to examine or correct the shortage mentioned, and refused to furnish and deliver any further crushed stone or curbing to the defendant, and continued to so refuse; that by reason of such failure, fault, and neglect on the part of the plaintiff the defendant was actually and necessarily hindered and delayed in executing and completing his paving contract, and suffered and sustained great loss of time and damage with his hired men and otherwise to the amount of $1,500. And the answer contained a further counterclaim to the effect that on account of the plaintiff's failure and neglect to furnish crushed stone and curbing as stated the defendant necessarily incurred other and further expenses in order to complete his paving contract, in that he was compelled to, and actually did, procure and purchase such crushed stone and curbing elsewhere, at greatly enhanced prices, to his damage in the sum of $1,000.

The plaintiff, by way of reply, admitted the written contract, but denied all other allegations in the respective counterclaims.

At the close of the trial the jury returned a verdict in favor of the plaintiff, and assessed his damages at $2,957.58. From the judgment entered thereon the defendant brings this appeal.

There is no dispute but that the plaintiff actually delivered the amount of curbing which he claims to have delivered, nor that he furnished three car loads of crushed stone,

which the defendant shipped to Rockford, Illinois; nor that the stone so delivered at the contract price amounted to $1,836.22. There is, however, a considerable dispute as to the amount of crushed stone delivered by the plaintiff to the defendant on the street in Waukesha. It appears that with each load of crushed stone so delivered the plaintiff furnished to the defendant, or to his superintendent, a ticket or memorandum of the weight of the load by the plaintiff's scales. The defendant gave evidence tending to prove that by actual tests on other scales the aggregate weight of three of the loads so delivered was several hundred pounds less than the weight represented by such tickets or memoranda. The defendant only made such tests as to three loads. On the other hand, there is evidence on the part of the plaintiff tending to prove that his weight of each and every load, as represented by such tickets or memoranda, and charged to the defendant, was substantially correct. The question as to the alleged shortage in the several loads of crushed stone seems to have been fairly submitted to the jury. The contract left each party to ascertain the weight of each load of the stone as he might be advised. In case of a dispute about the weight, the only way to determine the same was by submitting the question of weight to the jury. That was done as to the only loads upon which there was any conflict in the evidence. There was no error in charging the jury to the effect that, even if there was a shortage in the three loads mentioned, yet that fact of itself was insufficient to establish a shortage in any of the other 592 loads.

The principal ground urged for the reversal of the judgment is the ruling of the trial court in excluding all evidence as to damages sustained by the defendant by reason of the plaintiff's refusal to furnish any more stone to the defendant under the contract after June 16, 1898. The defendant claims that under that contract the plaintiff was bound to furnish sufficient stone to enable the defendant to complete

a contract he 'had previously made with the city of Wauke-
sha for "concreting and paving" the "whole of West Main
street" in that city.   The defendant's answer alleges, in
effect, that April 21, 1898, the plaintiff submitted to the de-
fendant the written proposal to furnish stone as mentioned,
and that such proposal was accepted by the defendant May
4, 1898; that at the date of such acceptance it was further
agreed and understood that the plaintiff should furnish and
deliver, whenever requested by the defendant and without
delay, all the crushed stone and curbing necessary for the
purpose of concreting and paving the whole of Main street
in accordance with the defendant's contract with the city,
and that nothing should become due to the plaintiff thereon
until the defendant completed its contract with the city and
the work should be accepted by the city, and that such
agreement included all stone shipped by the plaintiff to the
defendant at Rockford; but there is no allegation that such
written contract was ever changed or modified in any way.
The trial court expressly held that the defendant was at
liberty to prove, if he could, that after his written accept-
ance of the plaintiff's written proposal there was a modifica-
tion of such contract, or a subsequent contract.   The defend-
ant gave evidence tending to prove that the parties had a
long conversation, immediately after such written accept-
ance, as to the capacity of the plaintiff to furnish such stone,
but, as held by the trial court, there is no evidence to justify
a finding that the written contract was modified in any re-
spect.   It follows that the rights of the parties must be de-
termined by the written contract.

The writing so submitted by the plaintiff was a mere
proposal to furnish the stone described, at the prices named,
and deliver the same on the street in the city of Waukesha
in such quantities as might be desired.   The defendant's
acceptance was absolute, and in no way qualified the pro-
posal.   It was conceded on the argument that the defendant

was not bound to receive from the plaintiff a sufficient amount of such stone to complete his contract with the city. The question recurs whether the plaintiff was bound, at the option of the defendant, to so furnish and deliver stone sufficient to complete the defendant's contract with the city. Of course, in so far as the stone was actually delivered and accepted by the defendant, the parties became bound; but the question is whether the plaintiff is liable in damages for failure to furnish enough more to enable the defendant to complete his contract with the city.

In making the ruling complained of, the trial court manifestly followed the decision of this court in *Wells v. M. & St. P. R. Co.* 30 Wis. 605. In that case it appears that the defendant company telegraphed to the plaintiff that it wanted ballasting done from Brookfield to Milwaukee, for which it would pay at a certain rate per cubic yard, and the plaintiff telegraphed back, accepting the proposition; that the plaintiff also submitted to the defendant a written proposition to do all the train work required by the company for the grading of the depot, side track, etc., in the city of Milwaukee, at a certain price per cubic yard, which was also accepted by the company, and it was held that the contracts were unambiguous, and were for so much ballasting and grading, respectively, at the places named, as the company should wish to have done, and that the parol evidence offered by the plaintiff that a specific amount of such ballasting or grading was required at either place to complete the work or render the road serviceable, and that the plaintiff was prevented by the company from doing such work, to his damage, was properly rejected.

So it has been held in New York that where the defendant offered by letter to receive from the plaintiff, and transport from New York to Chicago, railroad iron, not to exceed a certain number of tons, during certain specified months, at a specified rate per ton, and the plaintiff answered merely

assenting to the proposal, but did not agree on his part to deliver any iron for such transportation, there was no valid contract binding on either party. *Chicago & G. E. R. Co. v. Dane*, 43 N. Y. 240. Such ruling has been expressly sanctioned in late cases in that state. *Barrow S. S. Co. v. M. C. R. Co.* 134 N. Y. 24; *Rafolovitz v. Am. T. Co.* 73 Hun, 87.

So, in Massachusetts, where A. wrote to B., a common carrier over one of two routes from the West, that he was about to buy grain in the West, and wished to hear soon if B. was disposed to contract for its transportation, as he should buy in a different market for B.'s route than for the other; that B., in reply, stated his rates for carrying flour from the end of a canal to several towns, and A. then wrote, asking whether the rates applied to grain as well as flour, and whether B. would abate a discrimination in them against A.'s town, and B. answered that he would carry A.'s flour and grain from the canal to that town at a given rate, to continue in force till close of navigation, unless notice to the contrary, and A. replied the same day, accepting the proposal,— it was held that by the terms so ascertained the relation of the parties was in the nature of an open proposition by B. to which A. might, from time to time, give effect as a contract by delivering the flour and grain and calling for its transportation, but that B.'s right to end the contract by notice was unqualified. *Thayer v. Burchard*, 99 Mass. 508. So it has been held in Louisiana that a contract by which one engages to deliver to the other such quantities of coal as he might require during the year, up to a specified limit, at a specified price, but containing no engagement on the part of the buyer to take or pay for any of the coal, was not enforceable against the promisor. *Campbell v. Lambert*, 36 La. Ann. 35; *S. C.* 51 Am. Rep. 1.

So, in Minnesota, where the defendant promised to supply the plaintiffs, who were engaged in a general foundry

business, with all the Lake Superior pig iron wanted by them in their business from September 2d until December 31st next ensuing the making of the contract, at specified prices, and the plaintiffs simultaneously promised to purchase of the defendant all of such iron which they might want in their business during the time mentioned at the prices named, it was held that such facts did not establish a valid contract, since it did not establish an absolute mutuality of engagement, giving each party the right to hold the other to a positive agreement. *Bailey v. Austrian*, 19 Minn. 535. See, also, *Stensgaard v. Smith*, 43 Minn. 11; *Dayton, W. V. & X. T. Co. v. Coy*, 13 Ohio St. 84; *Utica & S. R. Co. v. Brinckerhoff*, 21 Wend. 139.

The general rule is that, unless both parties are bound so that an action could be maintained by either against the other for a breach, neither will be bound. Bishop, Cont. (enlarged ed.), § 78; Lawson, Cont. § 97. But such general rule has some well-recognized exceptions, as illustrated by the following cases: *Justice v. Lang*, 42 N. Y. 493; *Minneapolis M. Co. v. Goodnow*, 40 Minn. 497; *Jones v. Binford*, 74 Me. 439; *Cooper v. Lansing W. Co.* 94 Mich. 272; *Minnesota L. Co. v. Whitebreast C. Cb.* 160 Ill. 85; *Robson v. Miss. River L. Co.* 43 Fed. Rep. 364. As indicated in these cases, whenever the accepted proposition or contract is for the sale or delivery of a specific article or number of articles, or a specific amount of service or materials, or where, by the terms of the contract, the number of such articles, or the amount of such service or materials, is ascertainable, a promise of the other party may be implied, though not expressed in the contract, and hence the engagements are mutual.

In the case at bar the defendant confessedly was not obliged to take from the plaintiff, under the contract, all the stone required to complete his contract with the city, but only " such quantities as " he might desire. The accepted

proposition makes no reference to his contract with the city. According to the evidence in his behalf the defendant had, at the same time, two other similar contracts,— one at Morgan Park and another at Champaign, Illinois. The answer alleges, in effect, that the three car loads shipped to Rockford, Illinois, were under the same contract. The contract leaves the amount of stone to be delivered unfixed and unascertainable. There is nothing in the contract which implies that it was measured by or limited to the defendant's contract with the city. Of course, parol evidence was inadmissible to enlarge or modify the terms of that contract.

*By the Court.*— The judgment of the circuit court is affirmed.

MARSHALL, J. If I understand the grounds of the court's decision it is that a mere proposition, not supported by a consideration, or accepted, so as to bind each party to do some definite or ascertainable thing, does not constitute a binding contract. The authorities cited in the opinion of the Chief Justice all point that way, and with the law in that regard we have no contention to make. The trouble is, as it seems, the principles of law relied on do not fit the facts of this case. A brief reference to the cases mentioned in the opinion of the court will bear out that view.

In *Chicago & G. E. R. Co. v. Dane*, 43 N. Y. 240, there was a proposition by the plaintiff to receive and transport for the defendant, from New York to Chicago, such iron as it might offer for that purpose during the succeeding six months, which offer was accepted. It was held that the offer of the plaintiff was a mere option, with no consideration to support it; therefore, till accepted with sufficient definiteness to constitute a binding promise on the part of the defendant to furnish some definite or ascertainable quantity of iron for shipment there was no contract between the parties. The case recognizes that if the proposition upon

the one side were accepted on the other, so as to have the necessary elements of certainty to constitute a binding promise, all the necessary calls of a binding contract would be satisfied.

*Barrow S. S. Co. v. M. C. R. Co.* 134 N. Y. 15, was ruled by the same principle. The difficulty was that there was an accepted offer to carry passengers, no particular number being agreed upon. On the one side it was claimed that the acceptance was made with reference to a suggestion that the number of passengers would be at least 250; on the other, that the acceptance was of rates merely, and that the conversations as to numbers did not become a binding part of the contract, as no definite number was stated on the one side and accepted on the other as a basis for such contract. The court was nearly equally divided in rendering the decision. The difference of opinion was in regard to the construction of the contract, it being conceded that all the circumstances characterizing it were to be considered in determining what the parties intended by their language.

In *Stensgaard v. Smith*, 43 Minn. 11, there was a mere authorization, without consideration, by one person to another to sell the former's real estate. It was held revocable because there was neither a consideration nor mutuality in the contract to support it.

We might go on through all the cases cited, and numerous others of the same nature, which are ruled by these elementary principles: There must either be a present consideration given by one person for the promise of performance by the other, or there must be mutual promises, the one being made in consideration of the other, and the thing promised by each must be definite or ascertainable with reasonable certainty, else there will be no binding contract.

Now before the principles referred to should be applied to this case so as to lead to the result reached by the court, the facts should clearly appear calling for such application,

and before it should be determined that such facts exist, resort should be had to the well-known rules of construction in order to determine just what the parties intended.

My brethren cite, as conclusive, *Wells v. M. & St. P. R. Co.* 30 Wis. 605, but it will easily be found that the only point determined there was that a plain, unambiguous written contract cannot be varied by parol. The written contract was that plaintiff should do such ballasting from Brookfield to Milwaukee at a specified price as defendant should wish to have done, and such grading of the depot grounds in Milwaukee at a certain price as defendant might desire. The plaintiff attempted to prove by parol that the ballasting and grading to which the contract referred included all such work required at the points designated. No question was raised but that if the court were permitted to go outside of the language used by the parties to determine the meaning of the contract, by reason of ambiguity, and it were properly made to appear that the parties contracted with reference to a particular amount of work, their intention in that regard would be as effectually a part of the contract as if plainly written into it. The difficulty was that neither in the language of the contract, nor in its application, did there appear to be any obscurity calling for the application of rules of construction. That does not apply, in our judgment, to this case, as will be shown later. It will also be seen that want of mutuality was not the turning point in *Wells v. M. & St. P. R. Co.* It was not questioned but that Wells, having entered upon his work, was bound to proceed so long as the railroad company desired his services. *Boden v. Maher*, 95 Wis. 65, was a similar case.

Now to determine whether there was an enforceable contract between the parties we must first see what the precise nature of the agreement was. The suggestion made in *Wells v. M. & St. P. R. Co.*, that plain language does not admit of construction, does not apply here. The written

proposition was to furnish stone, delivered on the street in the city of Waukesha in such quantities as defendant might desire. If we look at the language and say because there is no uncertainty of expression there is no use for construction, we fail to apply the rule that obscurity, calling for construction, may spring from the consequences of a literal application of the plain, ordinary meaning of words, as well as from the meaning of words themselves. *State ex rel. Heiden v. Ryan*, 99 Wis. 123. We must assume that when parties attempt to contract they purpose making a binding agreement. So, when the literal sense of their language leads to a contrary result there is at once presented a situation which requires the court to look at such language from the standpoint the parties occupied at the time of using it, and if it thereby appear that the real intent was to make a binding contract, and that the language used to effect that purpose will reasonably admit of a construction which will effectuate it, that intent will be considered a part of the contract just the same as if within the literal meaning of its language. That rule is so elementary that we hesitate to spend time in support of it. Its application to this case frees it from all difficulty.

In *Sigerson v. Cushing*, 14 Wis. 527, Mr. Justice PAINE said, "It is often absolutely essential that the court should know the facts surrounding the parties, and the situation in which they are placed, in order to interpret the meaning of what they say in their contracts." In *Nilson v. Morse*, 52 Wis. 240, quoting from the opinion of RYAN, C. J., in *Lyman v. Babcock*, 40 Wis. 503, which however merely stated with approval an elementary rule laid down in Greenleaf on Evidence, it was said, "As it is a leading rule in regard to written instruments that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to in order to ascertain the nature and qualities of the subject to which

the instrument refers.   Evidence which is calculated to ex-
plain the subject of an instrument is essentially different
in its character from evidence of verbal communications
respecting it.   Whatever, therefore, indicates the nature of
the subject is a just medium of interpretation of the lan-
guage and meaning of the parties in relation to it and is
also a just foundation for giving the instrument an inter-
pretation, when considered relatively, differing from that
which it would receive if considered in the abstract." It
will be easily seen that the rule indicated is as well estab-
lished as that other rule that a written contract cannot be
varied by parol, which was the one applied in *Wells v. M.
& St. P. R. Co., supra*, and properly so.

The rule under discussion has been freely applied by the
courts when the language, though free from any ambiguity
of expression, if given its literal sense, without regard to
the particular circumstances in the minds of the contracting
parties when it was used, would result in failing to make a
reasonable, binding contract.   A good illustration of this is
*Nash v. Towne*, 5 Wall. 689, where there was a sale of flour
without anything in the bill of sale as to time, place, or
manner of delivery, and the court held that evidence was
proper regarding all the circumstances of the transaction,
including a letter which the vendor sent to the vendee with
the bill of sale, stating that the flour was sold free on board
the steamer at Neenah, and was stored safely and insured.
In view of the season a steamer to transport the flour was
not obtainable till the opening of navigation the following
spring, and the court therefore interpreted the words " free
on board steamer at Neenah " and the words indicating that
the flour was safely stored and insured, to mean that the
real engagement of the vendor was that he would safely
keep the flour till the opening of navigation and then en-
gage a steamer to transport it, and deliver the flour on board
such steamer free of charge.   The court said that the con-

tract being made in winter, and for transportation by water,
it was unreasonable to suppose an immediate delivery was
contemplated; and that, the flour being safely stored in the
warehouse and insured, it was unreasonable to suppose that
the parties contemplated that the property would be re-
moved therefrom till the proper time for shipment in the
manner contemplated, and that the words "free on board"
meant that the vendor would employ a steamer and place
the flour thereon free of charge. The general principle ap-
plied in reaching the conclusion was stated by Mr. Justice
CLIFFORD thus: "Courts, in the construction of contracts,
look to the language employed, the subject matter, and
the surrounding circumstances. They are never shut out
from the same light which the parties enjoyed when the
contract was executed, and, in that view, they are entitled
to place themselves in the same situation as the parties who
made the contract, so as to view the circumstances as they
viewed them, and so to judge the meaning of the words and
of the correct application of the language to the things de-
scribed." To the same effect are *Merriam v. U. S.* 107 U. S.
437; *Minnesota L. Co. v. Whitebreast C. Co.* 160 Ill. 85; *Wells
v. Alexandre*, 130 N. Y. 642; *Minneapolis M. Co. v. Good-
now*, 40 Minn. 497; *Cooper v. Lansing W. Co.* 94 Mich. 272;
*Robson v. Miss. River L. Co.* 43 Fed. Rep. 364; *S. C.* 61 Fed.
Rep. 893; *U. S. v. Peck*, 102 U. S. 64; *Canal Co. v. Hill*, 15
Wall. 94.

In some of the cases cited all the elements are present
that exist in the contract before us. The suggestion made
in the opinion of the court, that they differ from the instant
case and from *Wells v. M. & St. P. R. Co.* 30 Wis. 605, in
that they refer to the sale and delivery of a specific article
or a number of articles, or specific amount of services or
material, or at the time of the contract the number of such
articles or the amount of such services or materials were as-
certainable, is viewed with some surprise, since the question

was not suggested in the *Wells Case*, the only question being whether the terms of a written contract can be varied by parol, and since the court failed to note that such suggested necessary element was discovered in the numerous cases referred to, by the application of the rule of construction for which we contend, and which, if applied here, will make the contract in question as definite as any involved in such cases. For instance, in *Minnesota L. Co. v. Whitebreast C. Co.* 160 Ill. 85, the contract was for all the coal the vendee desired for the use of its boats for the season. The court said, in substance, that viewing the language of the contract in the light of the circumstances under which it was made, and the object of it, giving effect rather to the clear intent of the parties than to the literal sense of their words, it called for all the coal necessary to operate the boats for the season, and was binding. The other cases cited are along the same line.

It follows, in our judgment, very clearly, that it is the duty of the court to view the contract in question from the precise standpoint that the parties to it occupied when making it. The very fact that the literal sense of the words would not make a binding contract is enough in itself, as has been seen, to call for the course indicated. It cannot be assumed that the parties intended to do such an unbusiness-like thing as to reduce their agreement to writing, and yet have it of no effect except so far as actually executed. The parties were practical business men. We must assume that they had a well-defined, reasonable purpose in view, and intended to bind themselves accordingly. If that purpose can be clearly discovered, and is within the reasonable meaning of the language they used, looking at it from the standpoint they occupied in making the agreement, that meaning should be deemed to be a part of it. Defendant had a contract for paving and concreting Main street in the city of Waukesha. The unmistakable object of the contract with plaintiff was

to obtain the stone required for that work, delivered on the particular street to be improved, when and where needed. The language of the contract does not specify a particular street. For aught that appears, delivery on any street of the city was sufficient. Placing ourselves, however, in the situation of the parties, it is easily seen that "delivery on the street" meant when and where required for use on the particular street under contract. The term "in such quantities as may be desired". is an indefinite term when viewed apart from the obvious purpose of the contract; but in the light of all the circumstances it is clear that it was used to express the purpose of the parties that the plaintiff should furnish all the stone that might be needed from time to time for the work on the street to be improved. With that construction, the contract is free from all difficulties which my brethren found in it. It has the essential of mutuality, the essential of a consideration of each party to support the promise of the other, and the element of definiteness, so far as necessary within the rule that all agree is elementary. Supplying the words necessarily implied because of the obvious intent of the parties, the accepted offer is substantially as follows:

*To Mr. G. Maffioli* — Dear Sir: We propose to furnish all the crushed stone at 85c. per yard of 2,500 lbs., 30 in. x 4 in. curbing including corners, at 34c. per lineal foot, protection curb 15 in. x 4 in. at 10c. per lineal foot, all as per specifications, the stone to be delivered on the street in the city of Waukesha you now have under contract to pave and concrete, which may be required to carry out such contract. The stone to be delivered as aforesaid in such quantities from time to time as may be needed for such work.

So viewing the contract, the defendant was unquestionably entitled to counterclaim in this action for the damages sustained by him because of the refusal of the plaintiff to

carry out its provisions, and the judgment should be reversed for that reason.

BARDEEN, J.  I fully concur in the foregoing opinion of Mr. Justice MARSHALL.