## WESTON PAPER MFG. CO. v. DOWNING BOX CO.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1923.)

No. 3162.

1. Sales ⨺1(3)—Contract which leaves price to be fixed by seller is void for indefiniteness.

A contract for the sale of a large quantity of strawboard, to be delivered in monthly installments throughout a year, which authorized seller to fix the price for each three months' deliveries in advance, though it provided that such price "shall be the seller's market price then existing." *held* too indefinite to constitute a valid contract enforceable against the buyer.

2. Sales ⨺343, 344—Acceptance of goods under void contract binds buyer to pay at contract price.

Goods shipped under a contract void because of uncertainty as to price, but accepted by the buyer, must be paid for at the contract price.

⨺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Sales ⊗═22(3)—Invalid contract held validated in part by acceptance by buyer.**
    Though a contract for sale of strawboard for delivery in monthly installments was void because of a provision authorizing seller to fix the price for each three months' deliveries in advance, acceptance by buyer of the price named for the first three months' deliveries would constitute a binding contract for such quantity, though not for future deliveries.

In Error to the District Court of the United States for the Eastern District of Wisconsin.

Action at law by the Weston Paper Manufacturing Company against the Downing Box Company. Judgment for defendant, and plaintiff brings error. Reversed.

William L. Tibbs, of Milwaukee, Wis., for plaintiff in error.
N. L. Baker, of Milwaukee, Wis., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Defendant's demurrer to the plaintiff's declaration was sustained and the action was dismissed by the District Court. To review the judgment thus entered, the present writ of error was issued. The controversy arises out of a sales agreement, the material portions of which are set forth below.[1]

[1] Defendant's refusal to accept the strawboard was occasioned by its belief that the agreement was not binding, due to the price provision, which read:

"Which price shall be the seller's market price then existing under this the seller's standard form of quarterly price fixing contract."

Plaintiff set forth its cause of action in three counts, and sought to strengthen its position under the contract by alleging:

[1] "The buyer hereby purchases from the seller, and the seller hereby sells to the buyer, nine hundred (900) tons of standard corrugating strawboard, containing not to exceed ten per cent. (10%) of moisture, quality and finish same as heretofore furnished.

"Price: Shall be fixed by the seller on or before December 15, 1920, for the first three months' shipments, beginning January 1, 1921. Seller shall give the buyer notice, in writing, on or before the fifteenth (15th) day of third month thereafter, of the price for the tons to be shipped the ensuing three months' period, which price shall be the seller's market price then existing under this the seller's standard form of quarterly price fixing contract.

"Shipments shall be made as follows: Seventy-five (75) tons per month from January 1, 1921, to December 31, 1921, both inclusive.

"Terms: Cash in ten (10) days from date of invoice, less two per cent. (2%).

"Specifications: The buyer shall furnish to the seller, on or before the 15th of each month, specifications for the following month's requirements. If the buyer fails to furnish specifications for any month or months within the time provided above, the specifications last furnished by the buyer may be considered by the seller as specifications for future shipments until superseded by new specifications furnished by the buyer. The seller may at its option, however, cancel any tonnage not specified by the buyer within the time above provided.

"Sizes: Shall be such as will cut to advantage on machines which trim seventy-two and one half (72½), eighty (80), and one hundred and ten (110) inches of Terre Haute, Ind., mill, eighty-five (85) inches on Rockford, Ill., mill. Each month's requirements shall be considered as a separate contract, but, upon default of the buyer in payment, the seller may suspend or cancel this contract at seller's option."

" * * * That at the time of entering into said agreement, and for more than a year prior thereto, the said defendant was engaged in the manufacture and sale of paper boxes and other paper products; that for such purpose said defendant purchased large quantities of strawboard for corrugating; that during all of said time this plaintiff was engaged extensively in the manufacture and sale of such corrugating strawboard; that this plaintiff had a large and extensive trade in the sale of such strawboard, and it sold to dealers and manufacturers in various parts of the United States, and had a very large number of customers; that, at the time said agreement was entered into, said defendant had knowledge of and knew the above facts, and further knew that this plaintiff had, from time to time, been making sales, and had been entering into contracts for the sale of corrugating strawboard, such as was being purchased by the said defendant; that said defendant did further know that, in the operation of its said business, this plaintiff would thereafter and from time to time be making sales to various persons and corporations desiring to purchase strawboard for corrugating of the kind which defendant agreed to purchase, and that in the making of such sales current conditions must of necessity influence and determine the price to be paid therefor; and that such sales price must necessarily be reasonable and determined by the demand and supply of the product at the time such sales were being made, all of which facts defendant knew, and contracted with reference thereto."

In two separate counts, plaintiff sought to hold defendant because of acceptance or part performance of the contract. It will be necessary to separately consider whether these counts each set forth a cause of action, and the necessary fact statement will be made when reached.

Plaintiff asserts, and the defendant denies, the validity of a sales agreement where the "market price" is determined, as here, by the seller. In fact it is urged that such a provision is not a "market price" in any proper sense of the term, but is the seller's price, and brings the case squarely within the rule, announced in many cases, to the effect that an agreement which leaves the price to be fixed by the seller is too indefinite to be enforced and is void. Williston on Sales, §§ 37, 43, 464; Cold Blast Transportation Co. v. Kansas Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696; American Cotton Oil Co. v. Kirk, 68 Fed. 791, 15 C. C. A. 540; Crane v. C. Crane Co., 105 Fed. 869, 45 C. C. A. 96; United Press v. New York Press Co., Ltd., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288; Hoffman v. Maffioli, 104 Wis. 630, 80 N. W. 1032, 47 L. R. A. 427; Joliet Bottling Co. v. Joliet Citizens' Brewing Co., 254 Ill. 215, 98 N. E. 263; Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 Fed. 324, 114 C. C. A. 284.

Plaintiff, contending that the contract should be construed, if possible, so as to uphold it, insists that it is neither unilateral nor uncertain, but governed by the maxim, "Id certum est quod certum reddi potest." McConnell v. Hughes, 29 Wis. 537; Parker v. Adams, 47 Vt. 139; Matthews Glass Co. v. Burk, 162 Ind. 608, 70 N. E. 371; Lund v. McCutchen, 83 Iowa, 755, 49 N. W. 998; Solter v. Leedom Co., 252 Fed. 133, 164 C. C. A. 245. While so recognizing the rule for which plaintiff contends, we are unable to apply it to the facts in this case. We see nothing in this contract which takes from the seller the absolute right to fix the price in the future. Certainly defendant had no voice in fixing this price. Nor did any third party have any immediate influence upon plaintiff in determining the price. True, plaintiff may, in acting, have been governed by a desire to hold future business,

or have been prompted by other laudable motives. But plaintiff could have arbitrarily changed the price each quarter, and from such arbitrary fixation defendant had no appeal. Upon the ground of uncertainty, and also for want of consideration, we conclude the agreement as drawn was unenforceable.

[2] Plaintiff contends, however, that at least two of the counts are good as against attack by demurrer. As a basis for its position, it points to the allegation in count 1 of the declaration, which reads:

"That in accordance with said written agreement, Exhibit A, plaintiff did on December 15, 1920, give notice in writing to defendant and fix the price of the strawboard so agreed to be sold and purchased for the succeeding three months, to wit, January, February, and March, 1921, at the sum of one hundred ($100) dollars per ton; that said price so fixed was the seller's then existing market price, was fair and reasonable, and was determinable by sales which had been made; that thereupon said defendant acknowledged receipt of said written notice so fixing said price; that said defendant made no objection whatever to the price as so fixed by this plaintiff, but acquiesced therein, and did give specifications and order out part of the tonnage for said three months, and requested delay of shipping for the balance; that the said defendant did accept the said price so fixed by plaintiff as the price to be paid for the strawboard tonnage so to be manufactured and sold to said defendant during said three months; that this plaintiff did thereupon manufacture and offer to deliver during said three months two hundred twenty-five (225) tons of said strawboard so agreed to be sold and purchased, and this plaintiff has duly performed, fulfilled, and carried out all of the terms and provisions of said agreement on its part to be performed, and has been and still is ready and willing to perform said agreement," etc.

Under the authorities (Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696; Hoffman v. Maffioli, 104 Wis. 630, 80 N. W. 1032, 47 L. R. A. 427; Hopkins v. Racine Malleable & Wrought Iron Co., 137 Wis. 583, 119 N. W. 301; Thayer v. Burchard, 99 Mass. 508; Wickham & Burton Coal Co. v. Farmers' Lumber Co., 189 Iowa, 1183, 179 N. W. 417, 14 A. L. R. 1293) there can be no question but that goods shipped under contracts void because of uncertainty as to price, yet accepted by the purchaser when delivered, must be paid for, and at the price determined by the standard named in the contract. Such part performance, however, does not validate the entire agreement.

[3] In the present case, we are dealing with a slightly different question, considering the sufficiency of a declaration, not passing upon the merits of the case. The question narrows itself down to the effect of the allegation that defendant—

"acknowledged receipt of the said written notice so fixing said price. * * * made no objection whatever to the prices as so fixed, * * * and did give specifications and ordered out part of the tonnage for said three months and requested delay of shipment for the balance; *that the said defendant did accept the said price so fixed by said plaintiff as the price to be paid for the strawboard tonnage so to be manufactured,*" etc.

Does this allegation charge defendant with liability under a contract which, though void at its inception, became valid and binding through accepted modifications that overcome the uncertainty? In other words, we have a situation where the parties entered into an agreement which as drawn was nonenforceable because of uncertainty as to price. Under

these circumstances, had the vendor written to the defendant, and said: "The contract which we have entered into is indefinite and uncertain, and therefore invalid. I now propose to make it definite and certain, by making you the same proposal as found in the written agreement, excepting only the price provision, which was heretofore indefinite and uncertain, I now fix at $90 per ton. Will you accept?"—and had the purchaser replied, "I accept," could the validity of such a contract have been questioned? Obviously not. Nor can we escape the conclusion that such is the construction we must give to the foregoing allegation in the declaration, challenged only by demurrer.

The second count in the declaration, covering the second quarter of the year, differs materially from the first count, and fails to set forth the allegations of fact necessary to hold defendant under any modified contract. It is true the word "accept" is here used. But, as descriptive of defendant's action, it is limited and restricted by the words preceding it in the same sentence, which words are not sufficient to spell out a valid contract, without which defendant's liability cannot be established. It follows, therefore, that while the demurrer was properly sustained as to the second and third counts, it should have been overruled as to the first count of the declaration.

The judgment is reversed, with costs, with directions to proceed in a manner consistent with the views here set forth.