HOPKINS, Respondent, vs. RACINE MALLEABLE AND
WROUGHT IRON COMPANY, Appellant.

*January 7—January 26, 1909.*

*Contracts: Continuing offer: Consideration: Mutuality: Revocation:
Damages.*

1. Consideration in the form of mutuality being essential to the
   validity of a contract, a wholly executory contract for mutual
   acts is of no binding force upon one party unless and until
   the other has become bound thereby.
2. Such rule is subject to modification to the extent that an execu-
   tory promise by one party may be considered a continuing
   offer of performance, which, when accepted, in whole or in
   part, by the other party, becomes a contract *pro tanto* to the
   extent of the acceptance.
3. Such modification, however, is carried no further than to bind
   the offerer so long as he sees fit to keep the offer open.
4. A continuing offer may be revoked at any time except as to ac·
   ceptance thereunder prior to the revocation.
5. After the revocation of a continuing offer, no damage accrues
   to the offeree for refusal to comply with subsequent accept-
   ances.

APPEAL from a judgment of the circuit court for Racine
county: E. B. BELDEN, Circuit Judge. *Reversed.*

The plaintiff having secured a patent upon a certain farm
gate and having had some undisclosed negotiation with the
defendant, a manufacturer of malleable irons, the latter on
March 10, 1905, mailed to him the following writing:

"HOPKINS' GATE CONTRACT.

"The *Racine Malleable and Wrought Iron Company* of the
city of Racine, state of Wisconsin, hereby agrees with *Floyd
Hopkins* of the town of Belvidere, county of Boone, state of
Illinois, to furnish, at any time hereafter during the life of
the patent, castings for the patent improved farm gate of said
*Hopkins,* known as the Hopkins Gate, patented January 3,
1905, as follows, to wit: . . . We agree to furnish the above
named castings for forty cents per set at our shops to be
shipped to any point of the United States or Canada, the

price aforesaid to be for cash at Racine, Wisconsin.    The said company further agrees that it will furnish the above trimmings to any person or persons to whom the said *Hopkins* may make sale of any territory for his said *Hopkins* improved patent farm gate, provided the said *Hopkins* shall indicate by his order who such persons or purchasers are, but with the understanding that said *Floyd Hopkins* is not liable, or held liable for any castings so furnished to any purchaser or purchasers of territory from him."

. There was no reply, but from time to time, up to July, 1906, the plaintiff ordered castings in quantities from fifty to 150 sets, and they were supplied by the defendant, who seems to have manufactured a quantity in order to be able to furnish them as ordered.    On April 30, 1906, defendant wrote plaintiff that by reason of reorganization of its business it was a question whether it could continue to make or furnish the gate castings, and that it wrote in order to give plaintiff an opportunity to find some other place to have them made; that while it still had some irons on hand, it did not care to carry on the business in the old way by carrying stock and shipping all over the country when wanted; that it had no room for storage nor facilities for packing and shipping.    Again, on October 29, 1906, the defendant wrote him that it had approximately 400 sets of castings on hand, but was unwilling to continue the business after that stock was exhausted by carrying other stock, saying that the plaintiff would have to make arrangements to carry the stock elsewhere, and also stating:

"We do not object to making your castings for you, but after the goods are made they must be shipped out of here. We cannot carry a stock. . . . Orders that are placed after the stock on hand now is exhausted will be billed at revised prices."

December 14th it wrote again:

"The time is drawing near when we can no longer accept such contracts. . . . What stock we have made up, which is about 350 sets, we will close out, but we can no longer

make these castings and carry them in stock for you, and have you draw them from this stock. You will have to make arrangements to carry the stock elsewhere."

On December 27, 1906, plaintiff mailed to the defendant, what is called an order, the following letter:

"I wish one thousand sets of Farmer Hopkins' Gate castings patented January 3, 1905, manufactured and ready for delivery May 1, 1907. Will give you shipping directions later."

To which the defendant replied January 30th: "It is not possible for us to make the thousand set of Farmer Hopkins' Gate castings at the present time"—asserting as a reason the quantity of other work. And again, on February 22, 1907, referring to an intervening conversation, the defendant re-affirmed the letter of January 30th, and said: "We are unable to make up the order for you, and as conditions are at present, we could give you little or no encouragement for making up these goods in the future." The conversation referred to was claimed to contain a reiteration of the statement that the 350 sets on hand would be furnished as called for. Plaintiff, on April 9, 1907, entered into a contract with another manufacturer to manufacture a thousand sets of castings for the same purpose, of slightly greater weights and size, and with some modification of structure, at a price of fifty-five cents per set, to be paid when the manufacture was complete. Up to the time of the trial, January 13, 1908, the total ordered shipped by plaintiff from this 1,000 sets was 200 sets. Plaintiff brought suits for damages for defendant's refusal to comply with the order of December 27, 1906, and judgment was rendered by the court, without a jury, for damages at the rate of fifteen cents per set, or $150, from which the defendant appeals.

For the appellant there was a brief by *Kearney, Thompson & Myers,* and oral argument by *W. D. Thompson.*

For the respondent there was a brief by *Thompson & Harvey,* and oral argument by *F. Thompson.*

DODGE, J.   No principle is more elementary in the law of contracts than that consideration is essential to their validity, and that a wholly executory contract for mutual acts is of no binding force upon one party unless and until the other has become bound thereby.   In such a contract mutuality is an essential of validity. *Dodge v. Hopkins,* 14 Wis. 630; *Moulton v. Kershaw,* 59 Wis. 316, 18 N. W. 172; *Teipel v. Meyer,* 106 Wis. 41, 81 N. W. 982.   That rule has received modification to the extent that an executory promise by one party may be construed to evince his intention to make a continuing offer of such performance which, when accepted, in whole or in part, by the other party, becomes a contract *pro tanto* to the extent of the acceptance. Such offers are very common in the mercantile world and are a basis on which mercantile business is largely transacted.   Being in a sense a departure from the fundamental principle of the necessity for consideration, in the form of mutuality or otherwise, the exception is carried no further than to bind the offerer so long as he sees fit to keep the offer open.   In the present case the promise of the defendant to furnish castings was wholly executory and upon condition that the plaintiff should do acts in the future.   There is not the slightest suggestion that the plaintiff ever, even in the most informal manner, bound himself to the conditions expressed in that offer.   With him it was entirely optional at all times to purchase his supplies of irons wherever he chose.   True, as he from time to time ordered a shipment from the defendant he became bound to pay for such shipment according to the terms of the offer, and then, for the first time, did defendant become bound to fill his order. This is the vital and fundamental distinction between the present case and the authorities from this and other courts cited by the respondent.   In each of those cases there were express words on the part of the purchaser binding him to performance upon his part to the full extent responsive to

the offer made, albeit the promise was in some of the cases ambiguous. *Shadbolt & B. I. Co. v. Topliff*, 85 Wis. 513, 55 N. W. 854; *Walsh v. Myers*, 92 Wis. 397, 66 N. W. 250; *McCall v. Icks*, 107 Wis. 232, 83 N. W. 300; *Excelsior W. Co. v. Messinger*, 116 Wis. 549, 554, 93 N. W. 459; *W. G. Taylor Co. v. Bannerman*, 120 Wis. 189, 97 N. W. 918; *Eastern R. Co. v. Tuteur*, 127 Wis. 382, 105 N. W. 1067; *Minn. L. Co. v. Whitebreast C. Co.* 160 Ill. 85, 31 L. R. A. 529; *Lima L. & M. Co. v. Nat. Steel C. Co.* 155 Fed. 77, 11 L. R. A. N. s. 713. In each of these cases were promises by the purchaser to be bound by the contract, either by acceptance or otherwise. This element of consideration in the form of mutuality being wholly lacking in the instant case, it is unnecessary to consider many other objections urged to the validity of a contract resulting from defendant's letter of March 10, 1905. We deem it clear that that letter at most constituted a continuing offer to furnish castings upon payment of the specified price and might be revoked at any time by the defendant, except as to orders thereunder prior to the revocation. The letters referred to in the statement of facts of April, October, and December, 1906, are open to no construction but that of revocation of the offer, except to the extent of the irons then manufactured and on hand, so that the plaintiff could not by an order on December 27th impose upon the defendant any duty to manufacture for him other castings at the price named in the offer of March 10, 1905, and therefore is entitled to no damages for refusal so to do.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the action.