POPE, Respondent, vs. THOMPSON, Appellant.

*April 10—May 4, 1920.*

*Partnership: Action at law for share in profits: Necessity of final accounting: Agreement to form a partnership: Breach: Evidence: Contracts: Mutuality of obligation essential.*

1. One partner cannot maintain an action at law for a share of the profits against his copartner in the absence of a final accounting or settlement of the partnership affairs.
2. Evidence showing negotiations between the parties for the joint undertaking of certain contracts, in which no definite terms of partnership were stated, is *held* not to warrant the jury in finding an agreement to form a partnership, for breach of which plaintiff was entitled to a share of the profits made by defendant on the resale of a contract let to him.
3. Where there is no consideration for a ·contract except the mutual promises of parties, the contract is not binding on one party unless it is also binding on the other.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

Partnership. The complaint alleges that the plaintiff is a steam-shovel operator; that the defendant is a sewer contractor; and that on or about the 6th day of August, 1919, the plaintiff and defendant "entered into an agreement to share equally in the profits for the digging and constructing of certain sewers in the city of Kenosha;" that pursuant to said agreement the plaintiff went with defendant ·over the ground where the sewers were to be constructed, examined the plans, and performed other services in connection with said agreement; that on August 8; 1919,

the contract for the construction of said sewers was author-
ized by the officers of the city of Kenosha, confirmed by the
common council on August 11, 1919.   The contract price
for work to be done was $25,000; and "it was expressly
agreed by and between the plaintiff and defendant that each
were to share equally in the profits of said work, whether
the work was actually performed by them, or sold to some
other sewer contractor;" that on August 16th the defendant
sold the contract for the sum of $2,800; and demanded
judgment against the defendant for $1,400.

The defendant in his answer denied that the plaintiff and
defendant entered into an agreement to share the profits of
constructing the sewers referred to; "that on or about said
time the said plaintiff and defendant had conversations
respecting such work, but such conversations or acts or con-
duct on the part of the plaintiff did not result in the making
of any agreement;" and alleged that the defendant refused
to enter into any agreement, and the contract of the city
of Kenosha was awarded to the defendant personally.

There was a trial.   The jury, by general verdict, found
in favor of the plaintiff and assessed his damages in the sum
of $1,400.   Plaintiff had judgment accordingly, from which
the defendant appeals.

*Robert V. Baker* of Kenosha, for the appellant.

For the respondent the cause was submitted on the brief
of *Calvin Stewart* of Kenosha.

ROSENBERRY, J.   We are not enlightened as to the theory
upon which the plaintiff proceeded in this action.   Plaint-
iff carefully refrains from alleging that the plaintiff and de-
fendant were partners.   The allegation is "that each was
to share equally in the profits."   Manifestly, if there was
a partnership, in the absence of an accounting or settlement
of the partnership affairs the plaintiff could not maintain
this action at law against his copartner.   No such account-
ing or settlement is alleged or proven.   The only other

theory upon which the plaintiff can sustain his contentions in this case is that there was a contract for a partnership, and that by reason of the defendant's breach of this contract for a partnership the plaintiff has suffered damages, which he is entitled to recover. *Hill v. Palmer,* 56 Wis. 123, 14 N. W. 20.

The court instructed the jury:

"To entitle him to a favorable verdict the plaintiff must satisfy the jury by the preponderance or greater convincing force of the credible evidence that the agreement he claims was made between him and the defendant. A contract or agreement implies a meeting of the minds of the parties; that is, that they understand the proposition involved alike, the one consenting or agreeing to exactly the same thing the other does."

The jury found that there was a contract, and the vital question in the case is whether or not there is evidence sufficient to sustain the finding of the jury. The evidence is practically uncontradicted, and where contradicted we take as true that in favor of the plaintiff.

It appears that plaintiff was an experienced engineer or shovelman. The defendant went to the house of the plaintiff and requested the plaintiff to inspect a shovel which the defendant was using at the time. This was some time in the month of July. During the conversation the plaintiff told the defendant there was a good job coming to him which had not yet been advertised; whereupon the defendant asked the plaintiff how he would like to be in with him, and the plaintiff responded, "All right, *Markus,* I think we could make some money." The defendant said, "I would like to have you with me." The plaintiff responded, "Well, if that job comes maybe we can land it." After the city had advertised for bids plaintiff, accompanied by a friend who was in the employ of the defendant, went to the defendant's house. The defendant did not have the plans, but by arrangement the three met the next day and looked

over the ground where the work was to be done. The defendant said that he was going to figure on the job, and that if he got it the plaintiff was in with him. To this the plaintiff replied, "All right, I'm with you." The defendant then asked the plaintiff if he wanted to take the plans and specifications home, but the plaintiff replied, "No, it is no use. You are better posted on the work than I am. I handle the digging, the machine end of it, and you handle the other." On the 6th of August the plaintiff and defendant drove over a portion of the work and examined the location for the sewers on Fairfield avenue and other streets. They met again on Friday, August 8th, and the plaintiff then learned that the defendant was the lowest bidder. The plaintiff and defendant then examined a machine belonging to Franzen, plaintiff's employer. On August 9th the plaintiff and defendant went to Winthrop Harbor to look at a trenching machine. On Monday, August 11th, at the request of the defendant, the plaintiff and the defendant met an agent for the Parson Machine Company and had some talk with him about a digging machine, at which time the defendant introduced the plaintiff as, "This is my partner in the sewer business." About August 13th the defendant requested plaintiff to come to his house in respect to the machine that they had examined at Winthrop Harbor, at which time it is said that the defendant referred to the plaintiff as "My partner in the sewer business from now on." On Thursday noon, August 14th, the plaintiff went to the defendant's house, whereupon the defendant told the plaintiff that he could not get the machine at Winthrop Harbor, and suggested selling the job. The plaintiff replied, "You go ahead and sell it, as I told you long ago; sell it, if you want to sell it, but there is some money to be made over there." There was some further talk as to the amount which might be received for the contract. The next day the job was sold to Franzen. The plaintiff testified that he and the defendant were to have an agreement on the small stuff (referring

to some sewer construction work not in the contract sold and assigned) that the defendant got in addition to the $2,800. The defendant, according to the plaintiff, then told the plaintiff that he got $1,000 for the job. Upon receipt of this information the plaintiff said, "All right, *Markus*," and then the defendant said, "You are willing to buy half of my equipment?" To this the plaintiff replied, "Yes, seeing as I started, I am willing to go through with it, but you know there is nothing in the small stuff you got in addition to Fairfield avenue." On the same night there was further talk of purchase of one half of defendant's equipment, but as an inventory could not be made until the work was finished the matter was postponed. There were further negotiations. The plaintiff claims that on August 15th the defendant said he would give him $500 as one half of the profits, and from that time on each was to draw $40 a week salary, and part of the profits of the business was to be applied on the equipment until $2,500 was paid. The defendant was to be paid $3,000 for one half of the equipment. The next day the plaintiff learned that the job had been sold for $2,800. Being somewhat disturbed he sought the defendant; whereupon the defendant told him that he got $1,000. After the defendant had repeatedly assured the plaintiff that he received only $1,000, the plaintiff said to the defendant, "It is just like this: If you will show me you only got $1,000 for the job, I will be on your shovel Monday morning as I promised to be; or, if you will come clean with half of $2,800, as you promised to have me one-half full partner. I told Franzen if you didn't do this I would be back on his shovel on Monday morning." Plaintiff then returned to Franzen's employment, and shortly after that this suit was begun.

Outside of the talk that was had on August 15th to the effect that the plaintiff was to get $500 as his share of the Fairfield avenue job, which was to be credited one half on the amount due from him to the defendant on the equip-

ment, there is nothing in the history of these proceedings, in our view of the case, that ever rose to the dignity of a contract. The agreement made on the 15th in regard to the equipment and terms on which the partnership was to be carried on was expressly repudiated by the plaintiff by returning to his employment with Franzen.

As good a way as any to test the matter is to inquire whether or not in the event the contract had sold at a loss *Thompson* could have held the plaintiff for one half of the loss. Certainly if the contract is not binding one way it is not the other, where, as here, there is no consideration except the mutual promises of the parties. Down to the 15th there is nothing showing the subject matter with which the contract was to deal; how long it was to continue; what part of the capital, if any, was to be furnished by each partner; how much was to be allowed to the partners for services rendered; whether each partner was to give his entire time to the partnership business; or any other agreement definite and certain enough to be enforceable by either of the parties. What, if anything, did the plaintiff contract to do? Mutuality of obligation is absent. *Hopkins v. Racine M. & W. I. Co.* 137 Wis. 583, 586, 119 N. W. 301; 2 Page, Contracts (2d ed.) § 569.

The evidence falls far short of sustaining an executory agreement for a partnership, in the absence of which the plaintiff cannot recover in this action. There is no showing whatever as to what liability, if any, there remains on account of the contracts not transferred to Franzen, or any attempt to show any adjustment of the partnership affairs. The plaintiff reaches out for one half of the profits on a good contract, and denies all liability or responsibility as regards the others. His refusal to proceed unless the defendant should "come clean," as he phrases it, which no doubt meant pay over one half of the $2,800, did not place him in a position where he can maintain an action at law for unascertained profits.

*By the Court.*—Judgment reversed.