ULLMAN, Respondent, vs. BEE HIVE DEPARTMENT STORE and others, Appellants.

*May 4—June 20, 1927.*

*Landlord and tenant: Agreement to lease: Agreement to let implied: Consideration: Mutuality: Damages on breach: Corporations: Authority of officer to make contract: Evidence: Sufficiency.*

1. Undisputed evidence that an officer of a corporation executing a contract on its behalf to lease a store building was secretary, treasurer, and manager of the store business, and that he and his wife were the only officers of the corporation residing in the state, and a provision in the original lease giving the corporation the option to procure a new lease, are *held* to sustain a finding of the trial court that the officer was authorized to execute the agreement. p. 354.

2. A clear distinction must be drawn between mutual promises, as consideration sufficient to sustain a contract, and mutuality,

as that term is used in the law of contracts relating to specific performance. p. 354.

3. The rule that whenever an accepted proposition or contract is for the sale or delivery of specific articles or a specific amount of service or materials, or where the number of such articles or the amount of such service or materials is ascertainable from the contract, a promise of the other party may be implied, so that the engagements are mutual, is applicable to a contract for a lease. p. 355.

4. An agreement by the owner of a building to enter into a lease will be implied from the agreement of the other party to the contract to do so, as the latter could not perform unless the owner also performed. p. 355.

5. Such obligation of the owner is as effective and enforceable as if expressed in writing, and is a sufficient consideration for the promise of the other party. p. 355.

6. In an action for the breach of a contract to lease plaintiff's building, expert testimony that the rental value thereof, in view of an agreement in the contract that the lessees should make all their own repairs, would be $550 per month, is *held* to sustain an award of the trial court of $4,400 for eight months during which the premises were vacant. p. 355.

7. Where plaintiff's loss by defendant's breach of the contract largely exceeded the amount allowed by the court, defendant was not prejudiced by the failure of the court to follow the letter of the rule in computing damages. p. 355.

ESCHWEILER, J., dissents in part.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

Contract for lease. On August 28, 1925, *J. Segal* and *A. E. Segal,* residents of St. Paul, entered into a lease for the so-called Toplon store at Wausau, to run to January 1, 1926, at $450 per month. In this agreement the lessees were given a thirty-day option to lease the store for ten years at $650 per month, provided other parties then negotiating with plaintiff did not lease the property.

About October 1, 1925, *J. Segal, A. E. Segal,* and *L. D. Hoffman* organized the defendant *Bee Hive Department Store,* a Wisconsin corporation. D. S. Segal was made president, *J. Segal* vice-president, and *L. D. Hoffman* secretary and treasurer. Of the 250 shares of stock M. D. Hoff-

man held 170 shares.   M. D. Hoffman is the wife of *L. D. Hoffman* and is the daughter of *J. Segal* and his wife, D. S. Segal, all of whom were stockholders in the defendant company.   The stock in the company was paid for as follows: *L. D. Hoffman* and his wife, M. D. Hoffman, had been engaged in business in a small town in Iowa and the stock of merchandise was inventoried at $17,000 and conveyed to the corporation for 170 shares of stock; D. S. Segal, the mother, shipped in a small stock of goods from Plainview, Minnesota; the Segals had purchased the Levin stock at Wausau for $3,000 or $3,500.   The remainder of the stock except one qualifying share each for the father, son-in-law, and Beyers was issued to the mother, so that the mother and daughter together held 247 out of the 250 shares.

From October 30th on, plaintiff accepted rent under the lease paid by the *Bee Hive Department Store,* which in fact occupied the premises.   *Hoffman* as secretary and manager opened negotiations with the plaintiff in respect to the new lease.   The result of such negotiations was that the rental of $650 was reduced to $550 for the first year and $625 for the remaining nine years.   Pursuant to such negotiations the following agreement was entered into:

                    "Antigo, Wis., Nov. 3, 1925.
     "This agreement, entered into this third day of November, 1925, by and between *Sam B. Ullman,* Antigo, Wis., and the *Bee Hive Dept. Store Co.,* Wausau, Wis.

     "The said *Bee Hive Dept. Store Co.* agrees to enter into a ten-year lease for the store building known as the Toplon Store of Wausau, January first, 1926, and to pay thereafter a monthly rental of $550 per month for the year of 1926 and $625 thereafter until the termination of said lease.

     "The said *Bee Hive Dept. Store* further agrees to furnish the said *Sam B. Ullman* with good and satisfactory guarantee or guarantees securing him amply for satisfactory performance of their agreement and the payment of the rent for the entire period.

"It is understood that the *Bee Hive Dept. Store Co.* will make all improvements and repairs necessary to the building during this period.

"It is understood that should the *Bee Hive Dept. Store Co.* desire during this period to sublease any part of 'the premises there is no objection to their doing so.

"BEE HIVE DEPT. STORE,

"By L. D. Hoffman.

"SAM B. ULLMAN."

In the early part of December, *L. D. Hoffman* and *J. Segal* notified the plaintiff that they would repudiate the contract of November 3, 1925. The old lease expired December 31, 1925, and between Christmas and New Years the *Bee Hive Department Store* removed from the premises. When the premises were vacated the plaintiff sent a plumber to drain the heating plant and found that the boiler was greatly damaged by freezing.

This action was begun to recover damages upon the contract of November 3, 1925, against the defendant *Bee Hive Department Store* and against the defendants *A. E. Segal* and *J. Segal* for damage to the boiler and plumbing. Judgment was entered accordingly against *A. E. Segal* and *J. Segal* for $350 and against the *Bee Hive Department Store* for $4,400 and costs, from which the parties appeal.

For the appellants there was a brief by *Stone & Park* of Wausau, and oral argument by *Patrick T. Stone.*

For the respondent there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *R. E. Puchner.*

ROSENBERRY, J. It is the contention of the defendant company that *L. D. Hoffman* was not authorized to execute the contract of November 3, 1925, on behalf of the *Bee Hive Department Store.* It appears without dispute that *L. D. Hoffman* was the secretary and treasurer and manager of the store business at Wausau and that he and his wife were the

only officers of the corporation who resided in Wisconsin. It is apparent from a perusal of the lease that it was within the scope and purpose of the corporation to procure the lease because for that reason an option was included in the original lease of August 28, 1925.    Manifestly, the business could not be conducted until some store building was purchased or leased for that purpose.

The finding of the trial court that *L. D. Hoffman* was authorized to execute the agreement of November 3d both as a matter of law and of fact is amply sustained.

It is next contended that the contract of November 3d is not enforceable for lack of mutuality.    While this contention is phrased in the language of the books, the real basis of the contention is that the contract of November 3d lacked consideration because, no other consideration having been recited, there is not stated in express terms any promise on the part of the lessor to make and execute the lease.    We shall not attempt to discuss the doctrine of mutuality in contracts.

As pointed out by the text-writers (see 1 Page, Contracts (2d ed.) § 565; 1 Williston, Contracts, § 140; 3 Williston, Contracts, § 1434 *et seq.*), a clear distinction must be drawn between mutual promises as consideration sufficient to sustain a contract and mutuality as that term is used in the law of contracts relating to specific performance.    While the two propositions rest upon entirely different bases, the one is frequently mistaken for the other.

In *Pope v. Thompson,* 171 Wis. 468, 177 N. W. 607, the promise there relied upon as consideration is held to be too indefinite and uncertain to impose any obligation upon the promisor and therefore did not constitute consideration for the promise of the other party.

*American S. L. Co. v. Riverside P. Co.* 171 Wis. 644, 177 N. W. 852, on the other hand, is an example of a case in which the promise relied upon as consideration was sufficiently definite and certain to be enforceable and was therefore a valid consideration for the promise of the other party.

However, it is a well established rule that "whenever the accepted proposition or contract is for the sale or delivery of a specific article or number of articles, or a specific amount of service or materials, or where, by the terms of the contract, the number of such articles, or the amount of such service or materials, is ascertainable, a promise of the other party may be implied, though not expressed in the contract, and hence the engagements are mutual." *Hoffman v. Maffioli,* 104 Wis. 630, 637, 80 N. W. 1032. See 6 Ruling Case Law, p. 689, § 95. This rule, which constitutes an exception to the general rule, is applicable to contracts for a lease. 35 Corp. Jur. p. 1201, § 519, "Landlord and Tenant." See, also, 1 Page, Contracts (2d ed.) § 583; 1 Williston, Contracts, § 140

Here there could be no performance by the defendant company unless the plaintiff also performed. Under such circumstances an agreement by the owner to enter into a lease will be implied. This implied obligation is just as effective and enforceable as though it were expressed in the writing in words and is a sufficient consideration for the promise of the defendant company. The contract was therefore valid and enforceable.

It is next contended that there is no evidence to support the award of damages made by the trial court. There is no doubt that the rule of damages laid down in *Strimple v. Parker Pen Co.* 177 Wis. 111, 187 N. W. 1001, is the true rule. The court, however, in ascertaining the damages limited them to the amount of the rent for eight months, the period the premises were vacant, at $550 per month. While the court in the computation as indicated in the record did not follow the language of the rule, there is abundant evidence in the record to sustain the conclusion reached. The testimony of expert witnesses shows that in view of the agreement contained in the contract for a lease that the lessees were to make all of their own repairs, the rental value of the premises under such a lease would be $550 per month.

The loss incurred by the plaintiff by reason of the defendants' breach of contract would amount to a sum largely in excess of the amount actually allowed by the court, and under such circumstances there is no prejudicial error. *Kneeland-McLurg L. Co. v. Lillie,* 156 Wis. 428, 145 N. W. 1093.

As against the defendants *Segal,* the court found that by reason of their neglect to properly care for the premises plaintiff had sustained damages to the heating plant in the sum of $350, and judgment was entered accordingly. This finding is also attacked by appellants. No useful purpose will be served by a recital of the evidence. There can be no dispute that the plant was very materially injured, and the finding of the trial court as to the amount of damages due to the neglect of the defendants *Segal* is amply sustained by the evidence.

*By the Court.*—Judgment affirmed.

Eschweiler, J. (*dissenting in part*). With so much of the opinion as holds that there was a binding contract by the writing of November 3d I cannot agree.

Unless there be a promise by plaintiff there is no consideration sufficient to bind the defendant. There is conspicuous in this writing an entire absence of any promise by or obligation assumed on part of the plaintiff; all that is thereunder to be done is to be done by the defendant. It is proper in this connection to compare this document of November 3d with the lease of August, both drawn by the plaintiff, and upon the latter was predicated the assessment of damages against certain individual defendants. The August agreement, a present lease, with option, expressly recited that I (plaintiff here) *"agree to rent"* the property in accordance with the specified terms to the *Segals,* who expressly accept the terms fixed by that agreement. This earlier agreement by express terms binds the owner, plaintiff, to a lease, the

later agreement does not so bind; yet by the majority opinion the omission in the second writing is held equivalent to the expression in the first.

By the majority opinion the writing of November is held valid and binding on the theory that there is an implied agreement by the plaintiff to enter into the suggested lease and that such implied agreement is as effective and enforceable as though it were expressed in words and therefore is a sufficient consideration for defendants' promise.   Such a construction, I respectfully submit, is not warranted by any authorities cited or to be found, and if good doctrine here would be applicable in any situation where a writing is signed by two parties, one alone promising to do something.   The majority cite in support of such a far-reaching change in the law, *Hoffman v. Maffioli*, 104 Wis. 630, 80 N. W. 1032. In that case it was held there was no contract, and it recognized (p. 637) the general rule that unless both parties are bound so that an action may be maintained by either against the other for a breach, neither will be bound; such statement of the rule precedes the language quoted in the majority decision as to the recognized exceptions.   Six cases are there cited as showing such exceptions.   Not one of the six involved a leasing: *Justice v. Lang,* 42 N. Y. 493, involved a memorandum signed by one party only for a sale of rifles, and it was held that the one signature was a sufficient compliance with the statute of frauds; *Minneapolis M. Co. v. Goodnow,* 40 Minn. 497, 42 N. W. 356, where an implied obligation was found to furnish the logs the other agreed to saw; *Jones & Co. v. Binford,* 74 Me. 439, holding that there was an implied obligation to pay for all the *deliveries* of the corn the other agreed to plant and raise; *Cooper v. Lansing W. Co.* 94 Mich. 272, 54 N. W. 39, the giving of orders made an acceptance of an obligation to furnish all the wheels needed by the other; *Minnesota L. Co. v. Whitebreast C. Co.* 160 Ill. 85, 43 N. E. 774, an obligation to furnish the

coal required; *Robson v. Mississippi River L. Co.* 43 Fed. 364, a log-driving contract, held that even if plaintiff was not bound to deliver the logs, yet if plaintiff did deliver and defendant performed, then plaintiff must pay (p. 371). There is further cited 35 Corp. Jur. p. 1201, "Landlord and Tenant," § 519.   The text there first reads:

"The promise of a party to a contract for a lease must be supported by a consideration.   The proposed lessor's promise to give and the proposed lessee's promise to take the lease or to pay rent will support the corresponding promise of the other party to the contract. . . . The necessity for mutuality of obligation in a contract for a lease has been recognized."

There then follows the language evidently relied upon in the majority decision here, but which is evidently stated with some dubiety and as follows:

"It has been held that the promise to take a lease raises the corresponding obligation to give the lease, and that the agreement is not therefore lacking in mutuality merely because there is no express promise to give the lease."

To this statement but one authority is cited, viz.: *Illinois Life Ins. Co. v. Beifeld,* 184 Ill. App. 582.   That case involved a contract for a parcel of Chicago property covered by a number of leaseholds.   The language there held to bind the defendant, namely, "agrees to *take* lease," was construed in connection with the other provisions of the contract, namely, those by which the defendant was to build thereon and complete within a definite period a two million dollar building, the plaintiff in turn agreeing to buy a million dollars' worth of the bonds for such building, all made the entire contract one of a present agreement by defendant to accept the offer made by plaintiff to execute and deliver to him the lease, and that they were therefore mutual obligations.   Page 592.

The writing of November 3d appears to be no more than

an option or offer not binding on the plaintiff before compliance with its terms and acceptance by him.

If it were the defendant seeking to compel *Ullman* to make the future lease, I take it a court of equity would be compelled to refuse specific performance because of the lack of a sufficient binding promise or obligation on *Ullman's* part to make such lease.

The writing of November 3d being an executory contract, and neither party having done or being required to do anything thereunder prior to January 1st, there would have to be something in the nature of an adequate consideration in order for equity to compel performance after the latter date. *Ludwig v. Ludwig,* 170 Wis. 41, 47, 172 N. W. 726. As stated in 6 Page, Contracts (2d ed.), § 3288:

"If no consideration for the promise exists there is no contract, and specific performance is, of course, refused. A so-called contract which imposes no valid obligation upon the promisee, or which can be terminated by the promisee at will, lacks consideration, and specific performance will not be granted."

As stated in *Pope v. Thompson,* 171 Wis. 468 (177 N. W. 607), at p. 473, if a contract is not binding one way it is not the other, where there is no consideration except the mutual promise, and where mutuality is absent there is no enforceable contract, citing *Hopkins v. Racine M. & W. I. Co.* 137 Wis. 583, 586, 119 N. W. 301. In the latter case it is said that "No principle is more elementary in the law of contracts than that consideration is essential to their validity, and that a wholly executory contract for mutual acts is of no binding force upon one party unless and until the other has become bound thereby. In such a contract mutuality is an essential of validity;" and it goes on to speak of the modification of this rule as to the continuing offers common in the mercantile business, but treats such as exceptions to the

rule, and even in those exceptions as good only to the extent to which the offers were accepted by orders.

In *Wickham & Burton C. Co. v. Farmers L. Co.* 189 Iowa, 1183, 179 N. W. 417, 14 A. L. R. 1293, it is said that a promise to be good consideration for another promise must be such that there is absolute mutuality of engagement. This opinion cites several Wisconsin cases and upholds the rule that accepted orders under such contracts for sales do not validate such invalid agreements so far as it affects future orders.

Again in *Atlee v. Bartholomew*, 69 Wis. 43, 48, 33 N. W. 110: "In order to hold the defendants to their contract, the plaintiffs must also be bound by the same contract." In *Streeter v. Archer*, 46 N. Dak. 251, 176 N. W. 826, specific performance was denied because the party there, seeking to hold the other to a promise, had himself promised nothing.

In 1 Page, Contracts (2d ed.) § 569, cited in 171 Wis. 468, 177 N. W. 607, *supra*, the rule is stated to be that where an "alleged contract is so worded that one of the promises does not impose any legal duty upon the party making it, such promise is not a consideration for the other promise," there are cited as illustrations of it cases holding—a promise to pay for water furnished where the adversary party is not bound to furnish any; a promise to sell without any corresponding promise to buy; and a promise to buy without a corresponding promise to sell.

No authority is cited or apparently can be found upholding as valid a contract to execute a lease such as this, so barren of an intention on the part of the landlord to be presently bound, and where furthermore, as here, he has made such express conditions as to the form of the guaranty that must be offered, thereby giving such ample opportunity to then refuse to accept any tendered lease. To so import into this particular contract an implied obligation on plaintiff's part to execute a lease because needed as a consideration to support the writing as a contract, it seems to me the court

is giving to this writing the same effect as would be given
if it were a sealed instrument under and by virtue of sec.
328.27, Stats., viz., that the presence of a seal is presumptive
evidence of a sufficient consideration.    *Merrill v. Focht,*
172 Wis. 575, 579, 179 N. W. 813.