## Q. C. LUM, ALSO KNOWN AS QUON CHOCK LUM *v.* GERTRUDE V. STEVENS, ADMINISTRATRIX OF THE ESTATE OF FRANK SOFFRA, DECEASED.

No. 3055.

ARGUED NOVEMBER 22, 1957.          DECIDED FEBRUARY 3, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal from a decree denying the specific performance of a contract for the sale of 16.86 acres of land in Kalihi Valley, Honolulu. The suit was originally filed by Q. C. Lum, purchaser, against Frank Soffra, seller. During the pendency of the suit in the court below, Soffra died and Gertrude V. Stevens, administratrix of his estate, was substituted as respondent.

The contract upon which the suit is based was prepared by Benjamin Kong, a real estate broker, on a form of "Initial Payment Receipt and Contract" generally used by brokers in Honolulu. It specifies a purchase price of $22,500, payable $1,000 down and balance "in cash within 30 days or sooner, commencing November 8, 1947." It provides that in the event that the purchaser fails to pay the purchase price as therein provided, the seller may cancel the same and retain the initial payment as liquidated damages, and that in the event that the seller fails to consummate the sale, the purchaser not being in default, the purchaser may file and maintain a bill in equity for the specific performance thereof. It also contains the following rider: "November 7, 1947. The entire gross purchase price, $22,500 will be paid in cash upon execution and delivery of Deed. /s/ Q. C. Lum." Lum's name on the rider is typewritten and not signed.

The trial judge denied specific performance on the basis of his findings that time was of the essence of the

contract and that Lum failed to make a timely tender of the purchase price to Soffra. Lum appealed on the ground that the judge erred in making such findings and on the further ground that he failed to give any reason for such findings.

In a suit for specific performance, principles developed in courts of equity apply. In equity, time is not ordinarily regarded as of the essence of a contract. However time may be made essential. Parties may make it so by express stipulation or by otherwise clearly manifesting their intention that the contract shall be performed on or before a specified day. Where there is a clear manifestation of intention that time shall be of the essence, a party seeking specific performance will generally be denied the remedy unless he has performed or tendered the performance of his obligations within the specified time. (*Martin* v. *Morgan,* 87 Cal. 203, 25 P. 350; *Wimer* v. *Wagner,* 323 Mo. 1156, 20 S. W. [2d] 650; *Stern* v. *Shapiro,* 138 Md. 615, 114 Atl. 587; *Dodge* v. *Galusha,* 151 Neb. 753, 39 N. W. [2d] 539; *Fullerton* v. *McLaughlin,* 24 N. Y. S. 280; 4 Pomeroy, *Equity Jurisprudence,* 5th ed., § 1408; 49 Am. Jur., *Specific Performance,* § 42)

In Pomeroy's *Equity Jurisprudence, supra,* it is stated: "Time may be essential. It is so whenever the intention of the parties is clear that the performance of its terms shall be accomplished exactly at the stipulated day. The intention must then govern. A delay cannot be excused. A performance at the time is essential; any default will defeat the right to a specific enforcement." The statement appears too extreme because it allows no exception. The following statement in American Jurisprudence, *supra,* is more in accordance with the decided cases: "Time may be made of the essence of the contract by express stipulation, or even without an express stipulation to that effect where such intention is clearly manifested from the agree-

ment as a whole, construed in the light of the surrounding facts. In either case the court may refuse to decree specific performance where it appears that the plaintiff failed to perform on his part within the stipulated time, unless there is something in the facts to take the case out of the usual rule."

With respect to tender, it is stated as a general rule that technical rules governing tender in actions at law are inapplicable in equity and that tender in a suit for specific performance means "a present willingness and ability in good faith to perform the acts required of one by the agreement, provided that the other party will concurrently do the things which he is required by the contract to do, and notice by the former to the latter of such readiness, willingness and ability." (49 Am. Jur., *Specific Performance*, § 146; *Lewis* v. *McCreedy*, 378 Ill. 264; 38 N. E. [2d] 170)

We shall consider the evidence adduced at the trial with the foregoing principles in mind. The evidence is conflicting. Lum, Soffra and Kong did not agree in their testimonies. With reference to such conflict the trial judge stated: "To a large measure the case resolves itself into one of credibility of witnesses. The Court was deeply impressed with the frankness and candor of the Respondent, who was called by the Petitioner at the outset as an adverse witness. The Respondent died during the trial thereby foreclosing him from appearing as a witness in his own behalf at the close of the Petitioner's case. To the extent, however, that his testimony was contradicted by Mr. Ben Kong, real estate broker, and the Petitioner, the court is of the opinion that the Respondent is worthier of belief than either of them."

In June 1947 Soffra listed the property for sale with Kong for $25,000. Kong did not receive any offer to purchase at that price. On November 3, he received two offers to purchase for $22,500, one from Lum and the other from

Roy Soko Tomihama. Each offer was accompanied by a deposit of $1,000 on account of the purchase price. These offers were reduced to writing on forms prepared by Kong.

Lum's offer provided for the payment of the purchase price as follows: "$4,000 cash upon execution of an agreement of sale, balance to be paid in full within one year or sooner at 5% interest per annum; seller to give a partial release upon any lot sold after subdivided." Tomihama's offer was "$1,000 cash, balance, $21,500, to be paid within 60 days." On November 7 Lum signed a rider to his offer which provided for the payment of the entire purchase price upon execution and delivery of deed.

On November 8 Soffra went to Kong's office. Soffra had prior knowledge of Tomihama's offer because Tomihama had seen him personally after submitting the offer to Kong. It is not clear whether Soffra had prior knowledge of the details of Lum's offer. In any event, when Soffra went to Kong's office, he discussed the two offers with Kong.

Kong advised Soffra to accept Lum's offer, stating: "Well, Mr. Lum was the first, and he is interested in it, and he is sincere, and he has the funds, and I think you should give him every consideration, and in the event, if it should fall through, then this other party should have the preference." Soffra did not like the terms of payment in Lum's offer, even with the rider, and insisted upon cash payment of the purchase price within thirty days.

Thereupon, according to Soffra, Kong prepared the contract in this case, which specifically provides for such payment. Soffra also testified that when he signed the contract Lum had not yet signed it. On this point Kong contradicted Soffra. Kong testified that he prepared the contract on November 3 and Lum signed it on the same day.

Soffra's testimony is more plausible. The contract provides for the payment of the balance of the purchase

price within thirty days "commencing November 8, 1947." It is difficult to believe that Kong prepared a contract containing such language on November 3, particularly in view of the fact that he did not insert any reference to the commencement date of November 8 in Lum's original offer or Tomihama's offer, both of which he prepared on November 3.

When Soffra signed the contract, he in effect rejected Lum's original offer and made a counter offer in which he required the payment of the purchase price within thirty days. Lum, by signing the contract, accepted Soffra's terms.

The contract does not expressly stipulate that time was of the essence. The provision for its cancellation and forfeiture of the initial payment does not necessarily make time essential. However, the contract, construed in the light of the evidence discussed above, contains a clear manifestation of the intention of the parties to make time of the essence.

The time specified for the payment of the purchase price expired on December 8, 1947. Payment was not made on or before that date. Lum takes the position that he made a proper tender because he was ready, willing and able to pay and gave timely notice to Soffra of such readiness, willingness and ability. The difficulty with this position is that, when Soffra acted on such notice not once but twice, he was frustrated on both occasions.

Sometime before November 22, Lum made an arrangement to borrow $16,800 from Bank of Hawaii by mortgaging the land in question. He proposed to pay the balance of the purchase price with the money so borrowed, and with his personal check for $4,800, which he delivered to Kong. The check was intended to cover the difference between $21,500 and $16,800, and incidental expenses. Kong notified Soffra that the transaction would be closed on November 22.

It appears from Soffra's testimony that on that day he went to Kong's office with his wife at eight or nine o'clock in the morning; that Kong was not there and came at ten o'clock; that Soffra's wife signed the deed to release her dower and community property interest; that Kong used his telephone to contact Lum but was not able to do so immediately and told Soffra to go shopping and return to his office at eleven thirty; that Soffra went out shopping and returned at the specified time; that about ten minutes to twelve Lum appeared with the mortgage documents; that Kong handed the mortgage documents to Soffra and told him to take them and the deed to Morris Midkiff, loan officer at Bank of Hawaii; that Soffra went to the bank immediately and met Midkiff; that Midkiff told him that the department in charge of paying out the loan was already closed and no money could be paid; and that he left the bank without receiving any payment.

On November 28, another attempt was made to close the transaction. Soffra went to Bank of Hawaii with Kong. This time the bank declined to pay the money because it did not have Lum's authorization to pay to Soffra.

Both on November 22 and November 28, Midkiff offered to deposit the money in Soffra's account at his bank if Soffra signed and left the deed with him. Soffra refused to sign the deed unless the balance of the purchase price was paid to him. It is clear from Midkiff's testimony that his offer to deposit the money in Soffra's bank account was limited to $16,800 and that he at no time offered to deposit $21,500.

On November 29, Lum went to the bank and signed the necessary authorization.

On December 1, Lum and Soffra had a chance meeting at the police station. Lum's testimony differs from that of Soffra as to what took place there. According to Lum, he suggested to Soffra that they go together to the bank to

close the transaction, but Soffra refused. Soffra's testimony is that Lum did not offer to go to the bank with him; that Lum merely told him, "You go down and get the money; the money is there"; and that he told Lum that he would not go to the bank again unless the latter accompanied him.

Here again, Soffra's testimony is more plausible. Lum did not on other occasions, before or after this meeting, make any effort to participate in the closing of the transaction. As the trial judge stated, he did not "personally make any attempt to assist Respondent in bringing the transaction to a satisfactory conclusion." The following testimony reveals the attitude that Lum consistently maintained in connection with the transaction: "I don't know Soffra well enough. I rather let the agent, the broker close it."

Nothing of significance happened between December 1 and December 8. Lum repeatedly telephoned Kong to close the transaction because "time was rushing." The most that can be said of Kong is that he tried to get hold of Soffra and to get him to sign the deed.

The foregoing evidence with respect to tender shows a notice by Lum to Soffra of his readiness, willingness and ability to pay the purchase price. There is no satisfactory showing of actual readiness and ability. Even under the liberal rule that prevails in equity, actual readiness and ability must be shown. (*Altman* v. *McDonald*, 64 R. I. 311, 12 A. [2d] 230; *Aiello* v. *Colavecchio*, 79 R. I. 438, 89 A. [2d] 834) The evidence is that Lum made an arrangement with Bank of Hawaii to borrow $16,800 and that he delivered his personal check for $4,800 to Kong. Perhaps this evidence is sufficient to show readiness and ability to perform to the extent of $16,800, although we think that, after Soffra was frustrated twice, he was entitled to at least an unequivocal notice from the bank that the money

would be paid, before he was required to go to the bank the third time. However, the evidence of readiness and ability is clearly insufficient with respect to $4,800. The check was not certified. Lum could not recall on what bank it was drawn. There is no evidence, except Lum's statement, that the check was good. We may not assume that it was good solely on the basis of such statement. When Lum was asked whether he was able to pay the entire purchase price at the time of the transaction, he testified, "Yes; I got enough cash. I always have," and also, "Yes, any time I can pay him." The fact that Lum found it necessary to borrow $16,800 from the bank and the fact that he did not at any time make a cash tender of the purchase price belie his testimony that he always had enough cash to pay Soffra.

We find no error in the findings of the trial judge. They are amply supported by the evidence.

There is nothing in the evidence to take this case out of the usual rule. The usual rule, as stated previously, requires performance within the specified time where time is of the essence of the contract.

In *Cheney* v. *Libby*, 134 U. S. 68, where specific performance was granted, despite the fact that the contract made time essential in the most explicit language conceivable, there was evidence of substantial and unjust forfeiture that would result from a denial of the remedy, utmost diligence on the part of the purchaser, and sharp practice and connivance on the part of the seller to place the purchaser in default. The court said that in such circumstances, "there are other principles, founded in justice, that must control."

Here, there is no evidence of sharp practice on the part of Soffra, nor can it be said Lum showed much diligence.

Forfeiture of a small amount of initial payment and expenditure for survey does not necessarily require grant-

ing of the remedy. *Martin* v. *Morgan, supra,* involved a contract for the sale of land for $4,850, payable $150 down and balance within sixty days. The purchaser made the down payment, plowed the land, and surveyed and plotted it into lots. He failed to pay the balance of the purchase price within the specified time. The court denied specific performance.

This case is similar to the illustration in Restatement of the Law of Contracts, § 374, which is as follows: "A contracts to sell land to B for $10,000, payable in thirty days, time to be of the essence. B makes a down payment of $500; and it is agreed that this sum may be retained by A as liquidated damages in case of default. B fails to tender the balance until two days after it is due. The price that A could have got for his land during the thirty-day period is uncertain; and so also is its value after B's default. B may properly be refused a decree for specific performance or for restitution. No unjust forfeiture is shown."

Lum places considerable reliance upon *Bohnenberg* v. *Zimmermann,* 13 Haw. 4, and *Tomikawa* v. *Gama,* 14 Haw. 175. Both are cases in which this court was not satisfied that time was essential. In *Bohnenberg* v. *Zimmermann,* this court said, "In equity time is not regarded as of the essence of a contract unless an intention to make it so clearly appears. In the present case there is little tending to support the theory of such an intention and much to negative it." The statement of this court in *Tomikawa* v. *Gama* is as follows: "On behalf of the respondent it is contended that by the execution of the memorandum the parties agreed to make time of the essence of the original contract and to place it within the power of Gama to enforce a forfeiture in case of failure on Tomikawa's part to pay the balance due within the forty-five days and the thirty days additional. The language of the memorandum

seems to us to be incapable of this construction. We do not so construe it."

Lum also argues that the rider in the contract imposed concurrent stipulations and that he could not be considered to be in default until Soffra tendered him the deed. We do not so construe the rider. The rider first appeared in Lum's original offer under his signature. As added to the original offer, it obviously was intended to modify the terms of such offer which provided for the payment of the balance of the purchase price within one year. The evidence shows that Lum was informed that Tomihama offered to pay the purchase price within sixty days and that his offer to pay within one year was not acceptable to Soffra. So, he signed this rider, the effect of which was to accelerate the period of payment stated in his offer. Soffra rejected Lum's offer, even with the rider, and insisted on payment within thirty days. Kong thereupon prepared the contract in question, and in doing so he also copied the rider in Lum's original offer. That explains the absence of Lum's signature on the rider in the contract, although on the rider in the offer his name is signed. The language of the rider is not inconsistent with the provision in the body of the contract for the payment of the purchase price. That provision requires payment "within 30 days or sooner, commencing November 8, 1947." The rider may be construed to explain the word "sooner" and to require the payment immediately upon the delivery of the deed within the thirty-day period. If it cannot be so construed and reconciled with the provision in the body of the contract, the provision in the body of the contract controls in this case in view of the circumstances under which the thirty-day provision was incorporated.

In *Mealey* v. *Kanealy,* 226 Ia. 1266, 286 N. W. 500, an action to recover real estate commission, the contract originally provided for the payment of real estate com-

mission "upon the signing of the agreement by both parties." The defendant refused to sign the contract until the following sentence was added: "The commission being due and payable upon the transfer of the properties." The court denied recovery of the commission. In so doing, it stated: "Proof of the circumstances accompanying the execution of an ambiguous instrument is always admissible, not to vary its terms, but to assist in its interpretation. The fact that appellant refused to execute the contract until the last sentence had been added persuasively indicated the intention that it should be effective and controlling."

So, in this case, the fact that Soffra refused to accept Lum's original offer with the rider and insisted on a contract specifically providing for payment within thirty days makes the thirty-day provision effective and controlling.

Lum's further charge that the trial judge erred in failing to give his reason for the findings is based on section 10107 of the Revised Laws of Hawaii 1945. This case is not controlled by that provision but by Rule 52 (a) of Hawaii Rules of Civil Procedure, because although the suit was filed before the adoption of the rules, it was tried after their adoption. Rule 52 (a) provides that the findings of the trial judge shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial judge to judge of the credibility of witnesses. For this court to hold a finding clearly erroneous, it must be left with a definite and firm conviction that the trial judge made a mistake. (*Hawaii Builders Supply Co., Ltd.* v. *Kaneta,* 42 Haw. 111) Here we are not left with such conviction.

In view of our holding that the usual rule applicable to cases in which time is of the essence of the contract applies in this case, we deem it unnecessary to consider the events that transpired after December 8, the last day

298

on which Lum was required to perform.

Affirmed.

*Katsugo Miho* (*Fong, Miho, Choy & Chuck* with him on the briefs) for appellant.

*Hyman M. Greenstein* (also on the brief) for appellee.