## WILLIAM M. MILLER *v.* CLARENCE T. LOO.

## No. 4007.

ARGUED NOVEMBER 13, 1958.                    DECIDED DECEMBER 16, 1958.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Appellant, William M. Miller, sued appellee, Clarence T. Loo, in the circuit court for accounting, appointment of master and discovery, alleging the existence of a partnership between them, since August 15, 1950, in a quarrying business known as Kailua Limestone Company. After a trial, judgment of dismissal was filed in the circuit court, pursuant to a decision in appellee's favor by the circuit judge. Appellant moved for a new trial, which motion was denied. Thereupon, within the time allowed under H.R.C.P., Rule 73 (a), appellant filed a notice of appeal, which stated that the appeal was taken "from the order entered in the above court and

cause on August 1, 1956." The mentioned order is an order denying appellant's motion for new trial. No appeal has been taken specifically from the judgment.

The generally accepted doctrine is that an appeal should be taken from a judgment and that it does not lie from an order denying a motion for new trial. This doctrine has been adhered to in *Libby, McNeill & Libby* v. *Alaska Industrial Board,* 215 F. (2d) 781; *St. Luke's Hospital* v. *Melin,* 172 F. (2d) 532, and *Bass* v. *Baltimore & Ohio Terminal R. Co.,* 142 F. (2d) 779. It is not clear from the reports whether the appellants in these cases mistakenly appealed from denials of motions for new trials instead of from judgments. In *Atlantic Coast Line R. Co.* v. *Mims,* 199 F. (2d) 582, the court treated an appeal from the denial of a motion for new trial as one from the judgment where the record on appeal as a whole disclosed that the appellant intended to appeal from the judgment. The courts ruled similarly in *Sobel* v. *Diatz,* 189 F. (2d) 26, and *Sun-Lite Awning Corp.* v. *E. J. Conklin Aviation Corp.,* 176 F. (2d) 344. In the latter case, the court concluded from its examination of the statement of points to be relied upon on appeal, filed in connection with the notice of appeal, that the appellants intended to appeal from the order dismissing the involuntary petition in bankruptcy, although the notice stated that the appeal was from an order overruling a motion to alter and amend the order of dismissal. The order overruling a motion to alter and amend was equivalent to an order denying a motion for new trial. The court stated that "the notice of appeal must be construed in connection with the statement of points to be relied on; and, when so construed, it is clear that the purpose of appellants was to present for review the errors committed in the order dismissing the petition."

We think that where the record on appeal shows that the appeal was mistakenly taken from an order denying a motion for new trial and that the appellant's intention was to appeal from the judgment, the appeal should be treated as an appeal from the judgment. The rules of civil procedure are to be construed, not with technical exactitude, but to expedite the due administration of justice. (H.R.C.P., Rule 1; *Milton* v. *United States,* 120 F. [2d] 794.) Here, appellant filed a designation of record on appeal

simultaneously with his notice of appeal. It is evident from the designation that he intended to appeal from the judgment.

The case being properly before this court, we now turn to a consideration of the merit of the appeal.

Appellant does not have a written partnership agreement with appellee. He bases his claim on his own testimony and the testimonies of witnesses that appellee, in their presence, stated that appellant was his partner.

The business of Kailua Limestone Company is conducted on premises in Kailua, Oahu, owned in fee simple by Bishop Estate. Appellee founded the business early in 1949 when he started negotiations with Bishop Estate for a lease of the premises and received permission to enter pending the completion of the lease. He obtained the lease, effective April 1, 1949, and running for a period of ten years to March 31, 1959.

Initially the business was not profitable. As of December 31, 1950, it showed a cumulative operational loss of $22,955.30. As of the same day, appellant had invested $39,309.90 in it. Also, as of the same day, the net value of its plant and equipment, after depreciation, was $39,672.81, but it had current trade accounts payable of $40,829.74.

When appellee started the business, he had difficulty in finding a suitable person to take charge of the quarrying operations. He, therefore, was looking for such person when he became acquainted with appellant about the middle of 1950. After watching appellant work for about two months, appellee entered into conversations with appellant which resulted in the latter taking charge of the quarrying operations. The present controversy arises from the difference between appellant's version and appellee's version of the conversations.

Appellant's version is that appellee agreed to take him in as a partner in the business as of August 15, 1950, assign the lease to the partnership and contribute to it all of the plant and equipment then in use in the business, divide the profits and assume the losses in equal shares, and devote his full time to the supervision of the office, books and records; that appellant, in turn, agreed to contribute to the partnership his equipment then on the quarry site, assume joint liability for the debts of the business amounting

to about $40,000, and devote his full time to the supervision of quarrying operations; and that they agreed to establish a drawing account of $500, later increased to $550, per month for each of them.

Appellee's version is that appellant was hired on a straight salary of $500, later increased to $550, per month, with the added incentive that he would be given a half interest in the business when the business was "out of the hole," provided that he faithfully and satisfactorily performed the work expected of him, and that the expression "out of the hole" was amplified to mean when all accounts for capital expenditures were paid in full, all operating accounts payable were on a thirty-day basis, and his investment in the business was returned to him in full together with a proprietary allowance of $500 per month.

Thus, the principal difference between the two versions is that appellant's version contemplated the immediate formation of a partnership while appellee's version contemplated the transfer of a one-half interest in the business by appellee to appellant in the future upon the occurrence of specified conditions.

The circuit judge accepted appellee's version. He held that there was no partnership at any time between appellant and appellee and that the conditions on which appellant was to be given a one-half interest in the business never occurred.

Appellant states the questions involved on this appeal as follows:

"1. Was it prejudicial error for the court to not place any probative value on the admissions of partnership with the appellant by the appellee, although testimony of such admissions came from ten witnesses?

"2. Was it prejudicial error for the court to dismiss the admissions of partnership with the appellant by the appellee, as were adduced from the testimony of ten witnesses, by concluding that:

'* * * it is common in Hawaii for people to refer to another with whom they associate in business one way or another as their partner, or to use the term partner or partnership in a very loose manner, even though there be no actual co-partnership between them in the legal sense.'?

"3. Was it prejudicial error for the court to conclude that the moneys received by appellant were salary, and that the moneys received by the appellee were withdrawals, although the amounts received by both parties were exactly alike in amount and increased identically on or about January 1, 1953?

"4. Was the judgment of the court contrary to law and the weight of the evidence?

"5. Was it prejudicial error for the court to fail to grant the motion for new trial?"

Rule 3 (b) (3) of the rules of this court provides that ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved. Thus, in considering this appeal, we may confine ourselves to the points set forth in or necessarily suggested by the foregoing questions. Also, we need not consider the question as to whether the circuit judge committed prejudicial error in denying the motion for new trial, for appellant has not argued that point.

Among the findings of fact made by the circuit judge are the following:

(1) Appellee at all times bore all of the expenses of the business;

(2) Creditors of the business looked solely to appellee for the payment of its debts;

(3) Appellant at no time assumed any of the liabilities of the business;

(4) Appellee contributed all assets of the business, except approximately $4,000 of equipment brought to the quarry by appellant, some of which was used at the quarry;

(5) Appellee did not request appellant to bring any of his equipment to the quarry for use thereon and none of appellant's equipment was considered property of the business;

(6) Appellant did not have an equal voice in the management of the business but was subject to appellee's control;

(7) Appellant had no power to, nor did he purport to, exercise any power to bind appellee in transactions with third parties;

(8) Books and records of the business were always kept on an individual proprietorship basis;

(9) Appellant did not at any time report as his income or loss for tax purposes any of the profits or losses of the business;

(10) All moneys of the business were at all times kept in a bank account in the sole name of appellee, who was the only person with the power to draw checks on the account;

(11) After July, 1953, appellant failed to perform the services of superintendent of the quarry in a faithful or competent manner and was discharged by appellee on June 30, 1954, after he attacked appellee;

(12) At no time before July 30, 1953, or June 30, 1954, had the business earned sufficient profits to permit appellee to get his investment out of the business.

Appellant has not questioned these findings either in his statement of questions involved or in his specifications of error. Neither in his brief nor on his oral argument did appellant contend that such findings were erroneous.

The facts found by the circuit judge, and not disputed by appellant, are consistent with appellee's version of the conversations. So is the following testimony of appellant at the outset of his cross examination:

"Q Did Mr. Loo offer to give you one-half of the business?
"A He did.
"Q When was that?
"A That was in the latter part of July 1950.
"Q When did you accept that?
"A On August 15th, 1950.
"Q When were you to receive one-half of the business?
"A As soon as we paid the $40,000 that we both owed. We both had to pay that off before we could take any money out of the company, with the exception of our drawing account of $500 each."

The foregoing testimony agrees with appellee's version to the extent that it contains appellant's admission that he was to receive a one-half interest in the business, not immediately, but only upon the payment of its debt. Appellant, on further cross-examination and on redirect examination, tried to explain away the admission and insisted that he was to receive the one-half interest

immediately upon commencement of his work as quarry superintendent. However, it is significant that his very first answer to the specific question concerning the date when he was to receive the half interest was that it was to be as soon as the debt was paid.

We cannot say that the judgment appealed from is contrary to the law and the weight of evidence unless the evidence in support of appellee's version is outweighed by evidence in support of appellant's version. Appellant's position is that such overriding evidence is found in the withdrawals of identical amounts by appellant and appellee from their drawing accounts and appellee's admission of the existence of a copartnership with appellant. In this connection, appellant claims that the circuit judge erred in finding that appellant was paid a fixed salary of $500 per month from October 15, 1950, to December 30, 1952, and $550 per month from January 1, 1953, to June 30, 1954, when he was discharged by appellee.

Under H.R.C.P., Rule 52 (a), the findings of fact of a trial court may not be set aside unless clearly erroneous. In construing this rule, we have held that we may not set aside such a finding unless we are left with a definite and firm conviction that a mistake was committed by the trial court. (*Lima* v. *Tomasa,* 42 Haw. 478; *Lum* v. *Stevens,* 42 Haw. 286; *Hawaii Builders Supply Co., Ltd.* v. *Kaneta,* 42 Haw. 111.)

Although appellant claims that the payments that he received from Kailua Limestone Company were from his drawing account as partner, documents bearing his signature show that he consistently treated such receipts as salary. On three separate dates, when there were changes in the number of exemptions to which he was entitled under the Federal income tax laws, he executed Treasury Department Form W-4, "Employee's Withholding Exemption Certificate." Only employees are required to file such certificates. Partners are not so required. Also, during the entire period that appellant was connected with the business, he reported such receipts in his income tax returns, both Federal and Territorial, as salary.

Appellee's testimony is that he did not have a drawing account and that the account which appellant claims is appellee's drawing account is a proprietary service allowance. Appellee explains the

proprietary service allowance as the amount that he was entitled to withdraw, in addition to his investment, before appellant became entitled to a one-half interest in the business. This proprietary service allowance was in the same amount as appellant's salary. However, appellee did not regularly withdraw the allowance. Between October 15, 1950, and December 31, 1952, the proprietary service allowance amounted to $13,250.00. During that period, instead of withdrawing that sum, appellee put in an additional sum of $3,435.90 in the business. Between October 15, 1950, and June 30, 1954, the allowance amounted to $23,150.00. Of that sum, appellee had withdrawn only $14,516.86.

In view of such evidence, we cannot say that the circuit judge erred in finding that the payments that appellant received constituted salary and not withdrawals from a partnership drawing account.

With regard to testimonies relating to appellee's admission of the existence of a partnership with appellant, the circuit judge stated: "Such testimony was given by ten witnesses. Of these, the demeanor of witnesses Omerod and Carter on the witness stand showed that portions of their testimony was false and evasive. Others had no understanding of the meaning of a partnership, and several were personal friends of the Petitioner." At the oral argument, appellant's counsel conceded the weakness of the testimonies of Omerod and Carter but argued that the remaining witnesses were entitled to credence.

Under H.R.C.P., Rule 52 (a), due regard must be given to the opportunity of the trial court to judge of the credibility of witnesses. Here, the circuit judge, who observed the demeanor of the witnesses, concluded that their testimonies were insufficient to override the evidence in support of appellee's position. On the record, we cannot say that we are left with a definite and firm conviction that the circuit judge erred in this respect. In *Pope* v. *Thompson*, 171 Wis. 460, 177 N. W. 607, the defendant introduced the plaintiff on one occasion as, "This is my partner in the sewer business," and referred to him on another occasion as "My partner in the sewer business from now on." Nevertheless, the court held that there was no partnership. Likewise, in *Smith* v. *Maine*, 260 N. Y. S. 409, the court held that no partnership ex-

isted despite evidence that the plaintiff signed a contract for the construction of a gymnasium, and also a mortgage for $8,000, jointly with the defendant and despite evidence of admissions by the defendant that the plaintiff was her partner. The court stated: "Claimed oral admissions by Miss Maine that Miss Smith was her partner. No finding of partnership can be made upon these. The courts have frequently stated that such claimed admissions as appear in this record are insufficient as a basis of findings."

Affirmed.

*J. Harold Hughes* (also on the briefs) for appellant.

*Frank D. Gibson, Jr. (Henshaw, Conroy & Hamilton* with him on the brief), for appellee.